**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KEVIN BARRY**, et al.<br><br>**Plaintiffs,**<br>**v.**<br><br>**ISLAMIC REPUBLIC OF IRAN,**<br><br>**Defendant.** | **Civil Action No.: 1:16-cv-01625-RC** |

**CONSENT MOTION FOR ADOPTION OF ADMINISTRATIVE PLAN GOVERNING FURTHER PROCEEDINGS OR FOR STATUS CONFERENCE**[1]

On November 15, this Court granted the Smith Plaintiffs' motion to intervene.[2] The Smith Plaintiffs are murdered or injured victims of the 1983 and 1984 terrorist attacks on the U.S. Embassy in Beirut, Lebanon, and their family members. There is no question of Iran's liability for the attacks – numerous courts in this district already have decided that issue. *See, e.g., Doe v. Islamic Republic of Iran*, 808 F. Supp.2d 1 (D.D.C. 2011) (1983 and 1984 attacks); *Brewer v. Islamic Republic of Iran*, 664 F. Supp. 2d 43, 47 (D.D.C. 2009) (1984 attack); *Welch v. Islamic Republic of Iran*, Civ. A. No. 01-863, 2007 U.S. Dist. LEXIS 99191 (D.D.C. Sept. 20, 2007) (mag. op.), *adopted by the district court in* 2007 U.S. Dist. LEXIS 99192 (D.D.C. Oct. 15, 2007) (1984 attack); *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 107-08 (D.D.C. 2005) (1983 attack); *Dammarell v. Islamic Republic of Iran,* 404 F.Supp.2d 261, 324 (D.D.C.

---

[1] As noted below, the original plaintiffs, through their counsel, have informed undersigned counsel that they consent to the relief requested herein. Undersigned counsel are unable to contact Counsel for Defendant regarding the filing of this Motion, as Defendant has not yet entered an appearance and/or has failed to acknowledge other efforts to contact it regarding this case.

[2] This Court permitted the Intervening Plaintiffs to proceed pseudonymously, given the acute danger to their lives and safety presented by their participation in a case against Iran. Accordingly, we refer to the Intervening Plaintiffs herein as the "Smith Plaintiffs."

Dec. 14, 2005) (1983 attack); *Wagner v. Islamic Republic of Iran,* 172 F. Supp. 2d 128, 133-34 (D.D.C. 2001) (1984 attack). On October 4, 2017, the original plaintiffs in this action ("the Barry Plaintiffs") submitted a Motion for Default Judgment, including damages evidence. That motion is pending. The Smith Plaintiffs also intend to prepare and submit a similar motion on liability, and, should this Court find Iran liable for the Smith Plaintiffs' injuries, evidence sufficient to allow this Court to determine an appropriate damages award to compensate each Plaintiff for his or her injuries.[3]

By this Motion, the Smith Plaintiffs respectfully request this Court to adopt a proposed Administrative Plan and a schedule for further proceedings consistent with similar schedules and administrative plans approved and used by courts in this district in similar cases for such purposes, including, in particular, cases involving large numbers of geographically disperse plaintiffs such as *Doe* and *Owens v. Republic of Sudan, et al.*, 01-cv-02244. In the alternative, the Smith Plaintiffs respectfully request this Court to schedule a status conference to discuss how the Court would like to proceed, including with respect to the receipt of damages evidence.

The original plaintiffs in this action have consented to the relief sought herein. Neither the Smith Plaintiffs nor the original plaintiffs have any objection to this Court addressing the original plaintiffs' pending Motion for Default Judgment while any proceedings pursuant to the proposed Administrative Plan are ongoing.

[3] On November 22, in response to issues raised in the original Plaintiffs' Motion for Default Judgment, this Court ordered the Smith Plaintiffs to submit a brief "addressing whether they face a statute of limitations issue on their claims and, if so, what, if anything, the Court should do about that issue if [Iran] fails to appear to defend itself." Minute Order, Nov. 22, 2017. On December 21, the Smith Plaintiffs submitted a brief explaining why they do not face a statute of limitations issue, and why this case should proceed to consideration of the merits.

**Timing Considerations**

In submitting this motion, the Smith Plaintiffs note that there are certain timing factors that are very important to the victims, and that the victims respectfully request the Court to take into consideration in adopting a plan and schedule for further proceedings. Specifically, the refusal by state sponsors of terrorism (and Iran in particular) to respect the jurisdiction of the U.S. courts or to honor judgments against them in favor of victims, has made it extremely difficult for victims to enforce or otherwise satisfy their judgments. To address this concern for terror victims, Congress has established a special Fund – the U.S. Victims of State Sponsored Terrorism Fund – to enable victims who obtain judgments against state sponsors of terrorism to receive some measure of compensation based on those judgments, subject to a series of rigorous application and eligibility requirements, including temporal requirements. *See* 34 U.S.C. 20144; U.S. VICTIMS OF STATE SPONSORED TERRORISM FUND, www.usvsst.com (last visited January 19, 2018) (noting that Fund will authorize payments to eligible claimants on January 1, 2019).

Should this Court follow its sister courts and find Iran liable for the 1983 and 1984 bombings, the Smith Plaintiffs reasonably would need to serve any judgment obtained in this case by early Fall 2018 in order to complete the application process and participate in the upcoming 2019 distribution from the Fund. The Smith Plaintiffs and undersigned counsel are prepared to take whatever steps are necessary to enable this Court to receive all evidence necessary to render judgment in this case in time for the victims to participate in the Fund alongside their colleagues and all other participating victims of state-sponsored terrorism.

**The Smith Plaintiffs**

The Smith Plaintiffs can be divided into two categories:

1. 72 individuals employed, or performing contracts awarded, by the United States Government, or the estates of such individuals, who were injured and/or killed as a result of the April 18, 1983 and/or September 20, 1984 bombings of the U.S. Embassy and U.S. Embassy Annex in Beirut Lebanon.

2. 396 immediate family members of those employee/contractor victims, who suffered emotional distress as a result of the attacks on their loved ones.

The Smith Plaintiffs (or the legal representatives of those plaintiffs who are deceased or otherwise incapacitated) are literally spread out across the globe, including in the United States, Asia, Australia, Canada, Europe, and the Middle East (mostly Lebanon).

**Collection and Presentation of Testimony**

Because of the sheer magnitude of the evidence to be presented, involving more than 400 claimants worldwide, the Smith Plaintiffs propose to present damages evidence in three ways: (1) expert testimony regarding economic damages for murdered victims; (2) *de bene esse* deposition testimony; and (3) sworn affidavits. Each is discussed briefly below.

This combination of expert, deposition, and affidavit testimony is intended to allow the Court sufficient information to apply appropriate standards and benchmarks derived from prior decisions under the FSIA Terrorism Exception to award damages to each individual victim.

***Expert Testimony.*** For the 9 estates of the victims killed in the attacks, the Smith Plaintiffs propose to submit an expert report detailing the economic damages sustained by each estate as a result of the bombing and the resultant deaths.

***De Bene Esse Deposition Testimony***. For the 63 injured employee and contractor victims, and the 396 family members of both the injured and murdered employee and contractor

victims, and to present the Court with a more complete view of the magnitude of the suffering each of them experienced, the Smith Plaintiffs propose to present a representative sample of their testimony through individual, video-recorded *de bene esse* depositions. Counsel will conduct the depositions and then submit the video recording of each Plaintiff's testimony on electronic media.

To provide a relevant sampling of the different types of claims in this case, the Smith Plaintiffs propose to conduct a minimum of one *de bene esse* deposition in each of the following victim categories: (1) injured in the 1983 attack; (2) injured in the 1984 attack; (3)-(4) family member of each of the above; and (5) family member of murdered victim. The testimony will focus solely on the injuries suffered by the plaintiff – physical and/or emotional – as a result of the attacks. As necessary, counsel will provide translator assistance to those Plaintiffs who are not able to communicate freely or comfortably in English.

Pursuant to Fed. R. Civ. P. 28(a)(1)(B) and (b)(1)(D), counsel requests the Court to commission or appoint representatives from Crowell & Moring LLP to administer any necessary oath at the commencement of the video-recorded deposition.[4] The oath, and the deponent's agreement to abide thereby, will be recorded and available for review.

***Affidavit Testimony***. In addition to the expert witness and *de bene esse* deposition testimony, and keeping in mind that testimony must be submitted for more than 400 Plaintiffs, the Smith Plaintiffs propose to present the remaining damages evidence through sworn affidavits from each Plaintiff, consistent with the Federal Rules of Civil Procedure. This is intended to

[4] *See* Fed. R. Civ. P. 28(a)(1)(B) (depositions may be taken within the United States before "a person appointed by the court where the action is pending to administer oaths and take testimony") and (b)(1)(D) (depositions may be taken in a foreign country "before a person commissioned by the court to administer any necessary oath and take testimony").

both ease the burden on the Court to receive and review such a large volume of evidence, and to ameliorate the significant financial and administrative burdens associated with the presentation of deposition testimony of so many individuals who reside across multiple continents, and many of whom do not speak English fluently.

**Appointment of Special Masters**

Consistent with the manner in which evidence has been presented in prior terrorism cases, the Smith Plaintiffs propose to submit the *de bene esse* deposition and affidavit testimony to one or more Special Masters appointed by the Court pursuant to 28 U.S.C. 1605A(e) and Fed. R. Civ. P. 53 to receive evidence and issue a Report and Recommendation to the Court. Counsel notes that the use of Special Masters in similar cases has proven helpful to the courts and to the victims in rendering a more efficient process for the collection and review of evidence and conserving judicial resources.[5] Counsel has contacted Mr. Paul Griffin, who served as Special Master in *Owens v. Islamic Republic of Sudan*, 01-cv-2244 and *Peterson v. Islamic Republic of Iran*, 01-cv-2094, and Mr. Alan Balaran, who served as Special Master in matters including *Foley v. Syrian Arab Republic*, 11-cv-00699, *Kaplan v. Hezbollah*, 10-cv-0483, *Relvas v. Islamic Republic of Iran*, 14-cv-01752, *Worley v. Islamic Republic of Iran*, 12-cv-2069, *Spencer v. Islamic Republic of Iran*, 12-cv-0042, *Brown v. Islamic Republic of Iran*, 08-cv-0531, *Anderson v. Islamic Republic of Iran*, 08-cv-0535, *Davis v. Islamic Republic of Iran*, 07-cv-1302, *Spencer v. Islamic Republic of Iran*, 06-cv-0750, *O'Brien v. Islamic Republic of Iran*, 06-cv-0696,

[5] In some cases, including *Doe*, evidence was submitted to a Magistrate Judge appointed by the Court, in lieu of one or more Special Masters. In this case, given the unique timing considerations as well as the sheer volume of plaintiffs involved, the Smith Plaintiffs respectfully submit that appointing experienced Special Masters to consider the damages testimony will be the most efficient and effective way to enable the Court to address the damages claims of each of the Smith Plaintiffs.

*Murphy v. Islamic Republic of Iran*, 06-cv-0596, *Bland v. Islamic Republic of Iran*, 05-cv-2124, and *Valore v. Islamic Republic of Iran*, 03-cv-1959. Messrs. Griffin and Balaran have indicated their willingness and availability to serve as Special Master in a similar capacity in this matter, should they be appointed by this Court.

Congress expressly contemplated and has authorized the appointment of Special Masters for cases like this under the FSIA Terrorism Exception. 28 U.S.C. §1605A(e). Congress also has specifically identified a source of funds for payment of Special Masters in such cases.[6] The Smith Plaintiffs respectfully submit that, given the number of victims in this case, and the time considerations relevant to their pursuit of long-awaited justice, this case is especially appropriate for the appointment of Special Masters to assist this Court in considering the evidence and rendering appropriate judgments. Accordingly, the Smith Plaintiffs propose that the Court appoint Messrs. Paul Griffin and Alan Balaran as Special Masters to consider and report to the Court regarding all issues relating to compensatory damages for each of their claims.

**Administrative Plan**

[6] *See* 28 U.S.C. §1605A(e)(2) ("The Attorney General shall transfer, from funds available for the program under Section 1404C of the Victims of Crime Act of 1984 . . . to the administrator of the United States district court in which any case is pending which has been brought or maintained under this section such funds as may be required to cover the costs of special masters appointed under paragraph (1). Any amount paid in compensation to any such special master shall constitute an item of court costs.").

Pursuant to 28 U.S.C. § 1605A(e)(1) and Federal Rule of Civil Procedure 53(a), Special Masters will be appointed by the Court to consider all issues relating to compensatory damages for each of the Smith Plaintiff's claims. The following plan shall govern all proceedings regarding determination of damages by the Special Masters:

1. Each proposed Special Master shall file a written, signed statement indicating that he/she (1) has read and will follow the Administrative Plan, and (2) is not subject to disqualification under 28 U.S.C. §455.

2. Payment of the Special Masters shall be contingent upon the provision of funding from public or private sources to the United States District Court for the District of Columbia. If funding is received from any non-governmental source, the amounts so obtained shall be deposited in the registry of the Court to be disbursed pursuant to an order of this Court. Each Special Master shall be paid $1,000 per day and shall be reimbursed for all reasonable expenses incurred in the performance of the duties herein described, upon submitting to the Court a voucher indicating such expenses. Where less than a full work day is expended by any Special Master in performance of duties under this Plan, the voucher shall indicate the portion of the day worked. Where less than a full work day but more than one-half of a work day is expended, the Special Master shall be paid $1000 for that day. Where less than one-half of a work day is expended, the Special Master shall be paid $500 for that day. Additional expenses beyond meals, lodging, and transportation shall not exceed $300 per day. Should any question as to expenses arise, the regulations promulgated by the Internal Revenue Service regarding business expenses shall govern and, subject to the above limitation, all expenses qualifying as business-related shall be paid. Time spent by a Special Master reviewing legal issues relating to damages shall be compensable in accordance with this paragraph.

3. The Special Masters appointed under this Plan shall consider all issues relating to compensatory damages as to each claim made by the Smith Plaintiffs. They are to be guided as to the admissibility of evidence by the Federal Rules of Evidence. However, it shall not be necessary for documents to be qualified as genuine pursuant to Federal Rule of Evidence 901. Authentication may be made by counsel's representation that a proffered document is genuine and is an accurate copy of what counsel proffers it to be.

4. The Special Masters shall be guided in reviewing and evaluating damages claims by the provisions of 28 U.S.C. §1605A, by any opinions of this Court on liability issues, by the opinions of the courts in this district in other litigations against Defendant, including *Dammarell v. Islamic Republic of Iran*, 281 F.Supp.2d 105 (D.D.C. 2003) ("*Dammarell I*"), *Dammarell v. Islamic Repubic of Iran*, 404 F. Supp. 2d 261 (D.D.C. 2005) ("*Damarell II*"), *Dammarell v. Islamic Republic of Iran*, Civ. A. No. 01-2224, 2006 WL 2583043 (D.D.C. 2006) ("*Dammarell III*"), and *Doe v. Islamic Republic of Iran*, 943 F.Supp.2d 180 (D.D.C. 2013), and by such further Orders as may be entered by the Court relating to any issues of compensatory damages.

5. Each Special Master shall have all the powers set forth in Fed. R. Civ. P. 53(c), including, but not limited to, the power to compel production of evidence and to administer oaths.

6. The Smith Plaintiffs shall submit to the Special Masters all damages evidence, consistent with the Administrative Plan, on a rolling basis, to be completed on or before April 27, 2018, unless otherwise ordered by the Court.

7. Each Special Master shall submit a report to the Court containing findings of fact and conclusions of law regarding compensatory damages as to each of the Smith Plaintiffs' claims no later than May 25, 2018, unless otherwise ordered by the Court.

**<u>Proposed Schedule</u>**

**Submission of affidavits and *de bene esse* deposition testimony: Plaintiffs to submit to Special Master(s) on a rolling basis by no later than April 27, 2018.**

**Filing of Proposed Findings of Fact and Conclusions of Law: Special Masters to submit to the Court no later than May 25, 2018.**

Dated: January 19, 2018

Respectfully submitted,

*/s/ Aryeh S. Portnoy*

Aryeh S. Portnoy
Stuart H. Newberger
John L. Murino
Emily M. Alban

CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 624-2500

*Attorneys for Smith Plaintiffs*