**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| KEVIN BARRY, *et al.* | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 16-1625 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 34, 39 |
| | : | | |
| THE ISLAMIC REPUBLIC OF IRAN, | : | | |
| | : | | |
| Defendant. | : | | |

**ORDER**

**DIRECTING THE PARTIES TO SUBMIT SUPPLEMENTAL BRIEFING AND REMANDING TO SPECIAL MASTER**

This case arises out of the 1983 and 1984 terrorist attacks on the U.S. Embassy in Beirut, Lebanon. On August 10, 2016, seven plaintiffs (the "Barry Plaintiffs") filed suit in this Court pursuant to the Federal Sovereign Immunities Act ("FSIA"), alleging that the Islamic Republic of Iran was responsible for their injuries in these attacks. *See* Compl. ¶ 1, ECF No. 1. On September 4, 2019, the Court entered default judgment on liability and damages for the Barry Plaintiffs. *See Barry v. Islamic Republic of Iran*, No. 16-1625 (RC), 2019 WL 4194824 (Sept. 4, 2019 D.D.C.). Still pending before the Court is a separate motion for entry of default judgment on liability brought by a distinct set of intervenor plaintiffs. *See* Mot. Default J., ECF No. 35. These hundreds of additional plaintiffs ("Smith Plaintiffs"), including U.S. government employees and contractors and their immediate family members, were granted leave to intervene in this action on November 14, 2017. *See* Order, ECF No. 14. The Smith Plaintiffs thereafter moved for adoption of an administrative plan wherein an appointed special master would issue a report and recommendation on compensatory damages issues for this set of plaintiffs. *See* Smith Pls.' Renewed Consent Mot., ECF No. 33. The Court granted this motion, *see* Order, ECF No.

36, and Special Master Griffin's sealed report was filed on August 9, 2019, *see* ECF No. 39. The Court's independent analysis of what theory of liability, if any, provides a substantive basis for Plaintiffs' claims for relief is required to address the pending motion for entry of default judgment as to liability. *See Owens v. Republic of Sudan*, 864 F.3d 751, 807 (D.C. Cir. 2017), *certified question answered,* 194 A.3d 38 (D.C. 2018), and *cert. granted in part sub nom. Opati v. Republic of Sudan*, 139 S. Ct. 2771 (2019) ("[T]he question [of] whether a statute withdraws sovereign immunity is analytically distinct from whether a plaintiff has a cause of action" under the FSIA (internal quotation mark and citations omitted)). In addition, the Court must conduct *de novo* review of the Special Master's recommendations concerning compensatory damages before entering any default judgment as to damages. *See Kaplan v. Hezbollah*, 213 F. Supp. 3d 27, 43 (D.D.C. 2016) (discussing standard of review for district court acting on special master's report (citing Fed. R. Civ. P. 53(f))).

However, the Court is missing several key pieces of information required to make these determinations, and, for the reasons that follow, directs the Smith Plaintiffs to provide supplementation and will remand this matter to Special Master Griffin for further development of the factual record and, as appropriate, updated conclusions of law concerning compensatory damages. For one, although the Smith Plaintiffs' complaint includes over 100 claims brought by legal representatives, the filings do not identify these individuals in sufficient detail. The complaint itself includes only pseudonyms and lacks additional description of the legal representatives. *See, e.g.*, Compl. in Intervention 1–2 (listing as parties, *inter alia*, "Jane Victim Smith By Jane Daughter1 Smith, as Representative;" "John Brother1 CSmith By Jane Representative CSmith, as Representative"). And subsequent filings, including the Special Master's Report and Recommendation, do not specify the name and identity of each of the

representatives. More detail regarding these individuals is required to determine whether the Court should enter default judgment concerning liability for each of the claims. Thus, the Court directs the Smith Plaintiffs to provide, under seal, an unredacted version of the complaint that is accompanied by a supplementary, unredacted filing stating whether any of the original plaintiffs are now deceased, and, if so, whether those plaintiffs' claims are now brought by legal representatives.[1] A redacted version of this material is to be filed on the public record.

In addition, the Court directs the Smith Plaintiffs to provide further specification concerning the claims brought. First, the Smith Plaintiffs are to provide the following information for each of the plaintiffs whose claim is brought by a legal representative: (1) which plaintiff(s) the legal representative is representing; (2) the legal representative's identity and nationality (at present and at the time of the 1983 and 1984 attacks), including whether the legal representative is a U.S. national as defined by section 101(a)(22) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(22), *see* 28 U.S.C. § 1605A(h)(5), or a foreign national; (3) the relationship between the plaintiff and his or her legal representative; (4) for all claims brought on behalf of an estate, which state's law governs the creation of the estate; (5) for any claims that are *not* brought on behalf of an estate, why the original plaintiff in interest does not bring the claim on his or her own behalf; (6) the paragraph numbers of the complaint in which the relevant claim is discussed; and (7) the pages of the Special Master's Report and

---

[1] The Smith Plaintiffs' emergency motion for an expedited telephonic briefing, ECF No. 43, makes clear that at least one of the original Plaintiffs has, regrettably, passed away since the Smith Plaintiffs filed their intervenor complaint. *See* Pls.' Emergency Mot. 2–3. The Court thus directs the Smith Plaintiffs to update the Court regarding the status of all plaintiffs, including the identity of this individual and whether his or her claim is now brought by a legal representative. In so doing, the Smith Plaintiffs are also to confirm that—given that some of the individuals acting as legal representatives were born in the early 1930s—the original legal representative remains alive and continues to bring a claim on behalf of the original plaintiff in interest.

Recommendation in which the relevant claim is discussed.  Without this information, the Court cannot assess the threshold question of whether this category of plaintiffs has standing to pursue a FSIA claim, *see Taylor v. Islamic Republic of Iran*, 811 F. Supp. 2d 1, 12 (D.D.C. 2011) (identifying "an estate's standing to maintain a cause of action" under § 1605A as "a threshold question concerning the power of the estate to bring and maintain legal claims"), let alone whether these plaintiffs have a substantive claim of liability pursuant to the FSIA, *see Owens v. Republic of Sudan*, 864 F.3d 751, 808 (D.D.C. 2017) (discussing "pass-through approach" applied to "effectuate the intent of the Congress to secure recoveries" for non-U.S. national "plaintiffs harmed by a terrorist attack").  To the extent that remand to the Special Master is necessary to develop the record and provide this information, the Smith Plaintiffs shall notify the Court, whereupon the Court will authorize the requisite remand.

    In addition, before making any determination regarding liability, the Court directs the Smith Plaintiffs to indicate which parties, if any, have withdrawn from the suit.  At least two Plaintiffs appear to have withdrawn based on two footnotes in the Special Master's Report and Recommendation.  *See* R.& R. 355 n. 11; *id.* at 513 n.14.  The Report and Recommendation stated that counsel for the Smith Plaintiffs would be filing a formal withdrawal of these claims; however, to date, no such formal withdrawal has been received by the Court.  The Court thus directs the Smith Plaintiffs to file a formal withdrawal on behalf of any such parties or, if there are no such parties, to inform the Court that this is the case.  If the two individuals discussed in the Special Master's Report and Recommendation have not in fact withdrawn their claims, then the Court directs the Special Master to enter findings of fact and to make a recommendation concerning the award of compensatory damages for these plaintiffs.

Finally, the Court also requires a more detailed development of the record to conduct *de novo* review of the recommended compensatory damage amounts.  Recognizing that the Special Master reviewed voluminous materials on an expedited timeframe, the Court seeks supplementation to address two issues: (1) a lack of any discussion of the sources relied upon to derive conclusions and (2) a lack of adequate discussion of the rationale for departures from the *Heiser* framework that courts in this district have applied in FSIA suits, *see Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 51–52 (D.D.C. 2007), coupled with a lack of sufficient explanation to distinguish instances that present seemingly similar facts, yet resulted in different recommended award amounts.  The Court will next discuss these issues in more detail.

At present, the Report and Recommendation states that the Special Master received evidence and established findings of fact by clear and convincing evidence, *see* R. & R. 2, yet does not cite to any underlying expert reports, testimony from doctors, declarations, or affidavits from which it derived its conclusions, *see, e.g.*, *id.* at 225 (discussing plaintiff who developed diabetes that she "believes is related to the stress and anxiety"); *id.* at 391 (discussing plaintiff whose "stress and anxiety" from the day of the attack "caused her to develop diabetes"); *id.* at 845 (discussing plaintiff who developed diabetes "as a result of the stress he felt after the attacks"); *id.* at 886 (discussing plaintiff who developed diabetes that "can be caused by constant stress").  The Court thus remands the case to the Special Master, who is to supplement the Report and Recommendation with citations to the sources of evidence from which such medical conclusions—whether they pertain to physical or psychological conditions—are derived, or, if no such source exists, to state explicitly that this is the case.

In addition, on remand, the Special Master is to provide more explanation of the rationale for departures from the *Heiser* framework.  There are two sub-issues here concerning,

respectively, upward and downward departures. In the case of upward departures, in each such instance, the Report and Recommendation states that such an increase is appropriate "on the basis of the unique and extreme emotional injury" that an individual suffered, "as described above." *See, e.g.*, R. & R. 8. But without more particularity to delineate *which specific aspects* of the injury described led to the particular recommendation of an upward departure, the Court is left guessing as to why an upward departure was recommended in one instance, but not in another instance that presents seemingly similar facts. *Compare, e.g.*, *id.* at 338 (recommending upward departure for victim who suffered 40% hearing loss in both ears) *and id.* at 355 (recommending upward departure for victim who suffered permanent hearing loss and damage to voice) *with id.* at 233 (recommending baseline award for victim who suffered permanent hearing loss and shoulder injury), *id.* at 410 (recommending baseline award for victim who suffered head injury and permanent hearing loss), *and id.* at 845 (recommending baseline award for victim who suffered hearing loss that has not been remedied by hearing aids or surgery); *see also, e.g.*, *id.* at 5–14 (recommending upward departure for husband and one daughter based on "unique and extreme emotional injury," but not for another daughter whose life was affected by similar changes as a result of the attack, without clearly establishing what differentiates the award to that daughter). Thus, for each upward departure, the Court directs the Special Master to provide a more particularized explanation of which specific facts underpin the damages recommendation for a given plaintiff.

Furthermore, on remand, the Special Master is to clarify the approach used with respect to the family members of victims for whom an upward increase was recommended. In some instances, it appears that a proportionate increase was recommended in such a situation; in others, it seems that an upward departure was recommended only for the victim, but not for

affected family members.  *Compare, e.g.*, *id.* at 513–40 (recommending upward departures for victim and for all members of family based on "unique and extreme emotional injury . . . as described above") *and id.* at 1088–1103 (same) *with id. at* 197–212 (recommending upward departure for victim, but not for family members).  As written, the Report and Recommendation does not provide enough explanation to assess which underlying facts, if any, distinguish such cases; indeed, in some cases, on the Court's best read, the descriptions seem quite similar.  Thus, for all instances in which an upward departure was authorized for the victim directly injured by the attack, the Court directs the Special Master to describe, in more detail, any specific facts indicating that a particular family member suffered a "unique and extreme emotional injury," such that an upward departure is appropriate for that family member, or, in the alternative, to explain in greater detail why a baseline award remains most appropriate for that family member.[2]

Finally, the Court directs the Special Master to provide further discussion of each of the instances in which a downward departure was recommended.  At present, the body of the Report and Recommendation does not include a footnote or explicit statement that a particular recommendation involves a downward departure at all, instead simply stating the lower award amount and relying on the across-the-board statement that a downward departure to $3 million was recommended for individuals who "suffered exclusively emotional injuries, subject to departures for unique circumstances."  *Id.* at 1177.  On remand, to assist the Court in analyzing each instance in which a downward departure is recommended, the Special Master is to indicate

---

[2] For any family member for whom the directly-injured victim's claims were resolved in a separate legal proceeding, *see, e.g.*, R. & R. 1128–35 (discussing claims of family of Dorothy Pech, who was a plaintiff in *Dammarell v. Islamic Republic of Iran*, Civ. No. 01-2224 (D.D.C.)), on remand, the Special Master is to indicate: (1) the amount awarded to the directly-injured victim in the prior proceeding and (2) whether the present recommendation concerning the family member reflects a proportional award, and why or why not.

in the body of the Report and Recommendation each time that a recommended award reflects a downward departure, along with a more detailed rationale along lines parallel to those articulated previously for upward departures.

In addition, the Court directs the Special Master to provide further explanation of its recommended damages awards for each of the family members of directly-affected victims for whom a downward departure is recommended. In some such instances, it appears that the recommended award reflects a proportionate decrease from the *Heiser* framework. *See, e.g.*, *id.* at 384 (recommending downward departure from $5 million to $3 million (60% of baseline) for directly-injured plaintiff and downward departure from $2.5 million to $1.5 million (60% of baseline) for father of directly injured plaintiff). In other such instances, even within the same family, the recommended award for a particular family member is higher than the proportional figure—but the reason for this higher award is not specified. *See, e.g.*, *id.* at 382 (recommending $2.5 million award for wife of same directly-injured plaintiff, when proportional 60% decrease would be $2.4 million); *id.* at 386 (recommending $1 million award for brother of same directly-injured plaintiff, when proportional 60% decrease would be $750,000). The rationale for these different outcomes is not specified in the Report and Recommendation. Nor is the method of calculation identified (e.g., was there a proportional decrease, and then an upward departure, or was some other method used?). Thus, for each of the directly-injured victims for whom a downward departure is recommended, the Court directs the Special Master, on remand, to explain in more detail how and why he arrived at each family member's recommended award

amount, including a detailed discussion of the specific underlying facts that undergird the recommended award amount.[3]

Accordingly, to address the foregoing items, it is hereby

**ORDERED** that the Smith Plaintiffs shall, within thirty days, file under seal an unredacted version of the complaint and a supplementary memorandum providing more information about each of the claimants and the withdrawn parties, as described above, or, in the alternative, notify the Court within thirty days that a remand to Special Master Griffin is necessary to provide such information; it is

**FURTHER ORDERED** that this matter is remanded to Special Master Griffin for further development of the factual record and updated conclusions of law; and it is

**FURTHER ORDERED** that Special Master Griffin shall inform the Court, within thirty days, how long he believes it will take to provide the requested supplementation.

**SO ORDERED**.

Dated:  October 21, 2019                                                                                  RUDOLPH CONTRERAS
                                                                                                                                  United States District Judge

---

[3] Again, for any family member for whom the directly-injured victim's claims were resolved in a separate legal proceeding, the Court directs the Special Master to indicate: (1) the amount awarded to the directly-injured victim in the prior proceeding and (2) whether the present recommendation concerning the family member reflects a proportional award, and why or why not.