# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| KEVIN BARRY, *et al.* | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 16-1625 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 34, 49, 53, 54 |
| | : | | |
| ISLAMIC REPUBLIC OF IRAN, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

**GRANTING IN PART SMITH PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT ON LIABILITY; GRANTING SMITH PLAINTIFFS' MOTION TO SUBSTITUTE; GRANTING IN PART SMITH PLAINTIFFS' MOTION TO ADOPT SPECIAL MASTER'S REPORT AND RECOMMENDATION; DENYING AS MOOT SMITH PLAINTIFFS' MOTION FOR HEARINGS**

## I. INTRODUCTION

In 1983 and 1984, respectively, two terrorist attacks targeted American servicemembers and embassy employees stationed in East Beirut, Lebanon. This Court, along with other courts in this Circuit, has contended with the tragic impact of these bombings in a number of mass tort lawsuits brought under the Foreign Sovereign Immunities Act ("FSIA"). Presently before the Court are the claims of hundreds of individuals who were either injured—in some cases fatally— in these attacks while acting in their capacity as a U.S. government employee or contractor or who are the immediate family members of such directly-injured individuals. Defendant Iran has not entered an appearance in the more than three years since the suit was filed. This Court must now decide whether to enter default judgment concerning liability for Plaintiffs and whether to adopt the Special Master's Report and Recommendation ("R. & R." or "report") concerning damages. As set forth below, the Court finds that the majority of the Smith Plaintiffs have

established liability and will enter default judgment concerning these individuals and, further, adopts in part the Special Master's suggested damages awards.[1]

## II. BACKGROUND

### A. Procedural History

The instant suit was initially filed by seven individuals—the "Barry Plaintiffs"—who were serving at the U.S. Embassy Annex in East Beirut, Lebanon at the time of the 1984 bombing.  On November 14, 2017, the Court granted leave for hundreds of additional plaintiffs—the "Smith Plaintiffs"—to intervene.  *See* Order, ECF No. 14; *see also* Intervenor Compl. by All Smith Plaintiffs ("Intervenor Compl."), ECF No. 17.  The Smith Plaintiffs, whose motions are presently before the Court, fall into two categories.

The first category consists of individuals who were employed by or performing contracts awarded by the U.S. government, or the estates of such individuals, at the time of the 1983 and/or 1984 bombings of the U.S. Embassy and U.S. Embassy Annex in Beirut, Lebanon.[2]  *See* Mem. Supporting Smith Pls.' Renewed Consent Motion for Adoption of Administrative Plan ("Mem. Supporting Smith Pls.' Renewed Mot.") 3, ECF No. 33-1.  The second category of Smith Plaintiffs consists of nearly four hundred immediate family members of directly-injured individuals who "suffered emotional distress as a result of the attacks on their loved ones."[3]  Mem. Supporting Smith Pls.' Renewed Mot. 3.

---

[1] On January 24, 2020, the Smith Plaintiffs moved for a status conference to "communicate with the victims regarding any further information the Court may require" to resolve their pending motions.  *See* Smith Pls.' Mot. for Status Conference and Mem. in Support, ECF No. 54.  Because the Court finds the written materials before it sufficient to resolve the pending motions, it denies this motion as moot.

[2] For expositional clarity, the Court refers to these individuals as "directly injured."

[3] For expositional clarity, the Court refers to these individuals as "family members."

The Smith Plaintiffs present several theories of relief. First, the directly-injured individuals seek compensatory damages pursuant to 28 U.S.C. § 1605A(c)'s private cause of action, *see* Intervenor Compl. ¶¶ 489–95, and, in addition, the personal representatives of those who were fatally injured in one of the attacks seek economic damages for wrongful death, *id.* ¶¶ 502–06. Second, all Smith Plaintiffs, including both the directly-injured plaintiffs and the family member plaintiffs, seek compensatory damages for intentional infliction of emotional distress ("IIED"), ¶¶ 496–501, and for solatium and/or loss of consortium due to the "extreme mental anguish, emotional pain and suffering, and the loss of the society and companionship of the victims," ¶¶ 510–11.[4]

While these claims were pending before the Court, given the number of individuals involved and their location across multiple continents, *see* Mem. Supporting Smith Pls.' Renewed Mot. 3, counsel for the intervenor plaintiffs moved for adoption of an administrative plan wherein an appointed special master would issue a report and recommendation on compensatory damages for the Smith Plaintiffs, *see* Smith Pls.' Renewed Consent Mot., ECF No. 33. The Court granted this motion, *see* Order, ECF No. 36, and Special Master Griffin's sealed report was filed on August 9, 2019, *see* ECF No. 39. Thereafter, the Court directed the parties to submit supplemental briefing to clarify the status of all Smith Plaintiffs and their legal representatives as well as the methodology used by the Special Master to calculate damages. *See* Order (Oct. 21, 2019), ECF No. 47. The Smith Plaintiffs and Special Master Griffin timely provided the requested information. *See* Smith Plaintiffs' Response to Court's October 21, 2019 Order ("Smith Pls.' Response"), ECF No. 48. In tandem with their supplementary briefing, the

---

[4] Technically speaking, these plaintiffs seek damages for "loss of solatium," Intervenor Compl. 136, but the Court follows the language of section 1605A and uses the term "solatium." *See* 28 U.S.C. 1605A(c).

Smith Plaintiffs filed motions requesting the substitution of certain legal representatives, ECF No. 50, and moving for the Court to adopt the Special Master's report and recommendations, as supplemented, ECF No. 53. Defendant Iran continues to decline to participate in this suit, and the Smith Plaintiffs' pending motions have ripened.

The Court previously entered default judgment concerning liability and damages for the Barry Plaintiffs, *see Barry v. Islamic Republic of Iran* ("*Barry I*"), 410 F. Supp. 3d 101 (D.D.C. 2019) and will now consider the Smith Plaintiffs' motion for default judgment concerning liability, review the Special Master's damages recommendations, and address the Smith Plaintiffs' motion to adopt these recommendations.

## B. Factual History

The Smith Plaintiffs were injured in the 1983 terrorist attack on the U.S. Embassy in East Beirut, Lebanon and/or the attack on the U.S. Embassy Annex in East Beirut the following year.[5]

---

[5] As this Court explained in *Barry I*, 410 F. Supp. 3d 161, the Federal Rules of Evidence authorize a court to take judicial notice of "adjudicative facts" "not subject to reasonable dispute" that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), including "court records in related proceedings," *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 171 (D.D.C. 2010) (citing 29 Am. Jur. 2d *Evidence* § 151 (2010)); *Booth v. Fletcher,* 101 F.2d 676, 679 n.2 (D.C. Cir. 1938); 2 McCormick on Evid. § 332 (6th ed. 2009)). Because of the number of individuals affected by terrorist attacks, and the associated "flood of cases that they generate," courts in this Circuit resolving FSIA cases have "regularly" taken judicial notice of the record in related cases. *Goldstein v. Islamic Republic of Iran*, No. 16-CV-2507 (CRC), 2018 WL 6329452, at *2 (D.D.C. Dec. 4, 2018) (citing *Rimkus*, 750 F. Supp. 2d at 171); *see also Murphy v. Islamic Republic of Iran,* 740 F. Supp. 2d 51, 58–59 (D.D.C. 2010); *Brewer v. Islamic Republic of Iran,* 664 F. Supp. 2d 43, 47 (D.D.C. 2009); *Estate of Heiser v. Islamic Republic of Iran* (*Heiser I),* 466 F. Supp. 2d 229, 262–63 (D.D.C. 2006). Significantly, "courts have taken notice of facts found in earlier proceedings in this District even when those proceedings have taken place in front of a different judge." *Foley v. Syrian Arab Republic*, 249 F. Supp. 3d 186, 191 (D.D.C. 2017) (citing *Brewer*, 664 F. Supp. 2d at 54).

Other courts in this Circuit have resolved numerous cases arising out of the 1983 and 1984 bombings in East Beirut, Lebanon. *See, e.g.*, *Brewer*, 664 F. Supp. 2d at 46 (suit involving survivor of 1984 bombing); *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128, 130–33 (D.D.C. 2001) (suit on behalf of individual killed in 1984 Annex attack); *Estate of Doe v. Islamic*

The bombing of the U.S. Embassy on April 18, 1983, "was the first large-scale attack against a United States Embassy anywhere in the world." *Dammarell I,* 281 F. Supp. 2d at 111. At just past 1:00 p.m. on that date, a vehicle "laden with hundreds of pounds of explosives" was driven into the main entrance of the Embassy, whereupon it "exploded with a force so powerful that seven floors in the center section of the crescent-shaped building collapsed." *Id.*; *see also Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105 (D.D.C. 2005) (taking judicial notice of the *Dammarell* court's factual findings regarding the 1983 attack). As a result of this attack, over sixty individuals were fatally wounded and over one hundred others were injured. *Id.*

After the 1983 attack, the operations of the U.S. embassy were transferred to the Embassy Annex, located in a different part of the city that was believed to be safer. *See Estate of Doe I*, 808 F. Supp. 2d at 7. But tragedy struck once more on September 20, 1984. That morning, the driver of a vehicle loaded with explosives evaded the concrete barriers put up as protection, ignored orders to halt, and detonated a bomb estimated to contain approximately 1500 kilograms of explosives. *See Barry I*, 410 F. Supp. 3d at 169 (citing *Brewer*, 664 F. Supp. 2d at 47; *Wagner*, 172 F. Supp. 2d at 132). The explosion, which "demolished the embassy

---

*Republic of Iran* (*Estate of Doe I*), 808 F. Supp. 2d 1, 7 (D.D.C. 2011) (suit by family members and individuals killed or injured in 1983 or 1984 attacks); *Dammarell v. Islamic Republic of Iran* (*Dammarell I*), 281 F. Supp. 2d 105, 108–113 (D.D.C. 2003) (suit involving over eighty survivors of 1983 Embassy attack). In fact, as Special Master Griffin's report states, the instant case involves the family members of some of the plaintiffs who brought claims in *Estate of Doe* and *Dammarell.* *See, e.g.*, R. & R. 842 n.31, ECF No. 39; *id.* at 1047 n.36; *id.* at 1077 n.43. In resolving these and other prior suits, courts in this Circuit have offered detailed factual reporting of the attacks. Thus, in this section and throughout this opinion, the Court takes judicial notice of these and related cases to draw its own, independent findings of fact in the instant case. *See Rimkus*, 750 F. Supp. 2d at 172 ("[C]ourts in FSIA litigation" may, in resolving "subsequent related cases," properly "rely upon the evidence presented in earlier litigation—without necessitating the formality of having that evidence reproduced—to reach their own, independent findings of fact in the cases before them." (citing *Murphy,* 740 F. Supp. 2d at 58–59)).

building," *Wagner*, 172 F. Supp. 2d at 132, killed over ten individuals and injured over fifty others, *see Estate of Doe I*, 808 F. Supp. 2d at 8.

The Smith Plaintiffs were among those struck by one or both attacks. More than 80 individuals who were at the site of one or both explosions were injured, many fatally, and their hundreds of immediate family members have contended with the ongoing pain of the bombings for over three decades. Based on the Smith Plaintiffs' filings and the Special Master's submissions to the Court, it is clear that these acts of terror deeply affected these individuals' lives. The question facing the Court is whether it should, as a matter of law, enter default judgment on the Smith Plaintiffs' claims, and if so, what measure of compensatory and economic damages are appropriate. For the reasons set forth below, the Court enters default judgment concerning liability and adopts in part the damages recommendations in the Special Master's report.

## III. LEGAL STANDARD

### A. Default Judgment

As this Court previously detailed in *Barry I*, 410 F. Supp. 3d 161, Federal Rule of Civil Procedure 55 sets forth a two-step process for a party seeking default judgment: entry of default, followed by entry of default judgment. Fed. R. Civ. P. 55; *see also Int'l Painters & Allied Trades Indust. Pension Fund v. Rose City Class Co., Inc.*, 729 F. Supp. 2d 336, 338 n.3 (D.D.C. 2010) (citing Fed. R. Civ. P. 55; *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)). First, after a defendant has failed to plead or otherwise defend against an action, the plaintiff may request that the clerk of the court enter default against that defendant. *See* Fed. R. Civ. P. 55(a). Second, following the clerk's entry of default, and where the plaintiff's claim is not for a sum certain, Rule 55(b)(2) permits the

plaintiff to apply to the court for entry of default judgment. *Id.* 55(b)(2). By providing for a two-step process, Rule 55 provides the defendant an opportunity to move the court to set aside the default before the court enters default judgment. *Id.* 55(b), (c).

Although entry of default judgment may at times be appropriate, it is "not automatic." *Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 74 (D.D.C. 2017) (footnote omitted) (quoting *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005)). Because "strong policies favor the resolution of disputes on their merits[,]" the court "normally" must view the default judgment as "available only when the adversary process has been halted because of an essentially unresponsive party." *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980) (quoting *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) (per curiam)). Even if a defendant appears "essentially unresponsive," *id.*, the court still has an "affirmative obligation" to ensure that it has subject matter jurisdiction over the suit, *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996). The court must also "satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." *Mwani*, 417 F.3d at 6–7. "Although the plaintiffs retain 'the burden of proving personal jurisdiction,'" "[i]n the absence of an evidentiary hearing," plaintiffs can "satisfy that burden with a *prima facie* showing." *Braun*, 228 F. Supp. 3d at 74 (internal quotation marks omitted) (quoting *Mwani*, 417 F.3d at 6–7). To make the required prima facie showing, plaintiffs may rely on "their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *Mwani*, 417 F.3d at 6–7.

## B. Evidentiary Showing Required by the FSIA

A court addressing a FSIA claim can enter default judgment against a foreign state only if "the claimant[s] establish[] [their] right to relief by evidence satisfactory to the court." 28 U.S.C.

§ 1608(e); *see also Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 232 (D.C. Cir. 2003) ("The court . . . has an obligation to satisfy itself that plaintiffs have established a right to relief."). This statutory standard mirrors the default judgment standard of Federal Rule of Civil Procedure 55(d). *See Hamen v. Islamic Republic of Iran*, 401 F. Supp. 3d 85, 90 (D.D.C. 2019) (citing *Owens v. Republic of Sudan* (*Owens II*), 864 F.3d 781, 785 (D.C. Cir. 2017), *cert granted sub. nom. Opati v. Republic of Sudan*, 139 S. Ct. 2771 (2019); *Hill v. Republic of Iraq*, 328 F.3d 680, 683 (D.C. Cir. 2003)). The "FSIA leaves it to the court to determine precisely how much and what kinds of evidence [] plaintiff[s] must provide, requiring only that it be 'satisfactory to the court.'" *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1047–48 (D.C. Cir. 2014) (quoting 28 U.S.C. § 1608(e)). A court making a determination about the evidence required must bear in mind Congress's statutory purpose in enacting a private right of action in section 1605A of the FSIA: to "compensate[] the victims of terrorism [and thereby] punish foreign states who have committed or sponsored such acts and deter them from doing so in the future." *Id.* at 1048 (quoting *Price v. Socialist People's Libyan Arab Jamahiriya,* 294 F.3d 82, 88–89 (D.C. Cir. 2002)). In parsing the evidence that plaintiffs offer, "[c]ourts may rely on uncontroverted factual allegations that are supported by affidavits." *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 386 (D.D.C. 2015) (citing *Rimkus*, 750 F. Supp. 2d at 171). "Uncontroverted factual allegations that are supported by admissible evidence are taken as true." *Braun*, 228 F. Supp. 3d at 74–75 (citing *Roth*, 78 F. Supp. 3d at 386; *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 63 (D.D.C. 2008), *aff'd*, 646 F.3d 1 (D.C. Cir. 2011)); *see also Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*, 510 F. Supp. 2d 101, 103 (D.D.C. 2007) (citing *Greenbaum v. Islamic Republic of Iran,* 451 F. Supp. 2d 90, 94–95 (D.D.C. 2006)).

## IV. THRESHOLD STATUTORY REQUIREMENTS

As the Court explained in *Barry I*, 410 F. Supp. 3d 161, before entering default judgment in a suit under the FSIA, it is to complete a multi-step process. First, as a threshold matter, it must ensure that it has subject matter jurisdiction over the Smith Plaintiffs' claims and, in addition, the Court must confirm that it may properly exercise personal jurisdiction over the Defendant. Then, upon a finding that jurisdiction is proper, the Court must decide liability and damages. For the reasons set forth below, the Court finds that it has original jurisdiction over this suit pursuant to the FSIA, that it has personal jurisdiction over Defendant Iran, and that the Smith Plaintiffs whose claims remain pending before this Court[6] have established liability and a right to relief in the form of compensatory damages.

### A. Jurisdiction[7]

Subject to an adequate showing by the Smith Plaintiffs, the FSIA waives Defendant's sovereign immunity and grants this Court subject matter jurisdiction over this suit. The FSIA separately sets forth procedural requirements to establish personal jurisdiction. For the reasons discussed below, the Court concludes that it has jurisdiction here.

---

[6] Two of the Smith Plaintiffs have voluntarily dismissed their claims. *See* Notice of Voluntary Dismissal of Claims, ECF No. 51. Thus, the Court does not address these individuals. In addition, as the Court discusses *infra* Part IV.B, one of the recently-deceased Smith Plaintiffs has not yet appointed a legal representative, and thus cannot establish his estate's standing to pursue a claim for relief at this time.

[7] As explained in *Barry I*, 28 U.S.C. § 1330 confers federal district courts with "original jurisdiction" in FSIA cases. *See* 28 U.S.C. § 1330(a) (stating that original jurisdiction exists "without regard to amount in controversy" in "any nonjury civil action against a foreign state" that "seeks relief *in personam*," and for which "the foreign state is not entitled to immunity). Here, the Smith Plaintiffs have not demanded a jury trial and seek only monetary damages, *see generally* Intervenor Compl., and Defendant Iran is plainly a foreign state. Thus, the Court will focus on the final element: whether Defendant Iran is "not entitled to immunity," such that the Court may exercise subject matter jurisdiction over Plaintiffs' claim.

### 1. Waiver of Sovereign Immunity

The pertinent jurisdictional question is whether the FSIA's "terrorism exception," 28 U.S.C. 1605A, applies such that Defendant Iran—a foreign state—is "not entitled to immunity," 28 U.S.C. 1330(a), and the Smith Plaintiffs may pursue their claims before this Court. *See Barry I*, 410 F. Supp. 3d at 172–73 (summarizing background sovereign immunity principles). The terrorism exception establishes "that a foreign state is not immune in 'any case' in which 'money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act.'" *Id.* at 173 (quoting 28 U.S.C. § 1605A). A plaintiff in a suit brought under the FISA "bears [the] initial burden of production to show an exception to immunity, such as § 1605A, applies," whereupon, if the defendant fails to appear, "jurisdiction attaches." *Owens I*, 864 F.3d at 784. In addition, the terrorism exception applies only if two prerequisites are met: (1) the foreign state was designated as a "state sponsor of terrorism at the time of the act,'" and "remains so designated when the claim is filed," 28 U.S.C. § 1605A(a)(2)(A)(i)(1), and (2) the "claimant or victim was"—as relevant here— "an employee of the Government of the United States[] or . . . an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment" at the time of the act, 28 U.S.C. § 1605A(a)(2)(A)(ii). *See also Mohammadi*, 782 F.3d at 14; *Schertzman Cohen v. Islamic Republic of Iran*, No. 17-1214 (JEB), 2019 WL 3037868, at *3 (D.D.C. July 11, 2019). The Court will first consider whether these threshold requirements are met and then consider whether this suit falls within the terrorism exception's waiver of sovereign immunity, thereby conferring subject matter jurisdiction.

*a. Requirements for a Claim to be Heard Under Section 1605A*

In this case, section 1605A's prerequisites are met. First, Iran was designated as a state sponsor of terrorism in 1984, *see* 49 Fed. Reg. 2836-02 (Jan. 23, 1984), and has remained so designated ever since, *see* U.S. Dep't of State, *State Sponsors of Terrorism*, https://www.state.gov/state-sponsors-of-terrorism/ (last visited Oct. 18, 2019). Thus, the claims involving injuries suffered as a result of the 1984 bombing satisfy the first portion of section 1605A. So, too, do the claims relating to the 1983 bombing. Although Iran was not designated as a state sponsor of terrorism at the time of the earlier bombing, another subdivision of the terrorism exception is applicable: a plaintiff may bring an action under section 1605A if "a related action was commenced" under the statutory predecessor to 1605A, 28 U.S.C. § 1605(a)(7), within 10 years of April 24, 1996. 28 U.S.C. 1605A(b). Following the Circuit's guidance in *Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1115 (D.C. Cir. 2019), the Court does not consider the 10-year statute of limitations provision set forth in section 1605A(b) to be jurisdictional. In this case, because Iran has not entered an appearance, it has waived any argument concerning this aspect of the statute's requirements for a claim to be heard.[8] *Accord,*

_____

[8] In any event, even if this were not the case, the Court notes without deciding the issue that the Smith Plaintiffs' claims would satisfy the terms of section 1605A(b)'s "related action" provision, which provides that "the foreign state defendants must have been designated by the U.S. Department of State as a 'state sponsor of terrorism' when the original action under § 1605(a)(7) was filed." *Estate of Doe I*, 808 F. Supp. 2d at 13. A number of actions related to the 1983 Beirut bombing were commenced in this Circuit under § 1605(a)(7). *See Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 58–59 (D.D.C. 2010) (discussing nine related cases: *Peterson v. Islamic Republic of Iran,* No. 01–cv–2094; *Boulos v. Islamic Republic of Iran,* No. 01–cv–2684; *Valore v. Islamic Republic of Iran,* No. 03–cv–1959; *Bland v. Islamic Republic of Iran,* No. 05–cv–2124; *Arnold v. Islamic Republic of Iran,* No. 06–cv–516; *Murphy v. Islamic Republic of Iran,* No. 06–cv–596; *O'Brien v. Islamic Republic of Iran,* No. 06–cv–690; *Spencer v. Islamic Republic of Iran,* No. 06–cv–750; and *Davis v. Islamic Republic of Iran,* No. 07–cv–1302). Moreover, certain of the Smith Plaintiffs have even more direct connections to related cases: several are the immediate family members of claimants in *Estate of Doe v. Islamic Republic of Iran*, Civ. No 08-450 (JDB), and *Dammarell v. Islamic Republic of Iran*, Civ. No.

*e.g.*, *Dibenedetto* et al. *v. Iranian Ministry of Information and Security,* et al., No. 16-02429 (TSC), 2019 WL 4860778, at *2 (D.D.C. Sept. 30, 2019); *Schooley v. Islamic Republic of Iran*, No. 17-1376 (BAH), 2019 WL 2717888, at *68 (D.D.C. June 27, 2019).  Thus, the first prerequisite for a claim to be heard under section 1605A is met for the Smith Plaintiffs' claims involving injuries arising from both the 1983 and 1984 bombings.

In addition, the Smith Plaintiffs have fulfilled the second prong of section 1605A(a).  Again, the terrorism exception applies only if the "claimant or victim was," at the time of the act, working as "an employee of the Government of the United States" or "performing a contract awarded by the United States Government" and, in either case, "acting within the scope of the employee's employment."  28 U.S.C. § 1605A(a)(2)(A)(ii).  Special Master Griffin's findings of fact establish by a clear and convincing evidence standard, R. & R. 2, that the Smith Plaintiffs directly injured in the attacks were either U.S. government employees or performing contracts awarded by the U.S. government at the time of the act, and that all were acting within the scope of their employment.  The Court accepts the Special Master's findings of fact, derived from uncontroverted evidence presented to him, on this matter.  Thus, these claimants plainly fall within the section 1605A categories of individuals entitled to bring a claim.  Each of the remaining claims that are brought by immediate family members, moreover, is rooted in one of these claims.  In other words, as has been the case in other suits involving claims for relief by family members of directly-injured individuals, the remaining "claims are derived from claims where the victims were U.S. Government employees" or performing contracts awarded by the U.S. government "at the time of the attack as required by § 1605A(a)(2)(A)(ii)(I)-(III)."  *Estate*

01-2224, *see, e.g.*, R. & R. 842 n.31, *id.* at 1047 n.36, and still others have previously sought to recover in related cases for injuries to immediate family members not presently before this Court in these same attacks, *see, e.g.*, *id.* at 179 n.5; *id.* at 799 n.30.  Iran was a state sponsor of terrorism when each of these related original actions were filed.

*of Doe I*, 808 F. Supp. 2d at 13.  Thus, all the Smith Plaintiffs have met the threshold requirements for a claim to be heard under section 1605A.

### b. 1605A's Waiver of Sovereign Immunity

With these threshold requirements met, the next jurisdictional issue facing the Court is whether the Smith Plaintiffs have met each of the requirements enumerated in section 1605A itself.  As the Court discussed in *Barry I*, "an exception to sovereign immunity exists for a foreign defendant when the FSIA claimant seeks [1] 'money damages' [2] 'against a foreign state' for [3] 'personal injury or death that [4] was caused by [5] an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act.'" 410 F. Supp. 3d at 174 (quoting 28 U.S.C. § 1605A(a)(1) (alterations added)); *see also Oveissi v. Islamic Republic of Iran* (*Oveissi III*), 879 F. Supp. 2d 44, 50–51 (D.D.C. 2012); *Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24, 32 (D.D.C. 2012)).  Just as in *Barry I*, the Court finds that each of the elements is met.  First, because the Smith Plaintiffs seek money damages in the form of compensatory and economic damages against Defendant Iran, *see* Intervenor Compl. 137, prongs one and two are satisfied.  Second, the Special Master's report and recommendation sets forth in substantial detail how each of the directly-injured Smith Plaintiffs suffered physical injury such as head trauma, loss of hearing, severe lacerations, and— in the case of nine Plaintiffs—how they were fatally injured in the attack.  It also delineates how each of their immediate family members suffered emotional pain and suffering due to the injuries of their loved ones.  The Court adopts the Special Master's uncontroverted findings of fact concerning the personal injury or death of each of the Smith Plaintiffs and therefore finds that the third prong is met.

Furthermore, Plaintiffs carry their burden regarding prong four: causation. "Causation in a FSIA suit is established when the plaintiff shows proximate cause, or 'some reasonable connection' between the defendant's act and 'the damages which the plaintiff has suffered.'" *Barry I*, 410 F. Supp. 3d at 174–75 (quoting *Valore*, 700 F. Supp. 2d at 66); *see also Owens I*, 864 F.3d at 794 (affirming proximate cause as the jurisdictional standard pursuant to 28 U.S.C. § 1605A). In this case, for the 1983 Embassy bombing, the Smith Plaintiffs allege that "the personal injuries and/or deaths of the Plaintiff victims of the April 18, 1983 attack, and the injuries to the Plaintiff family members . . . were the direct and proximate result of the willful, wrongful, intentional, and reckless acts of" individuals "whose acts were materially supported, funded and directed by Iran and its agents while acting within the scope of their offices, employment, or agencies." Intervenor Compl. ¶ 480. The Smith Plaintiffs further allege that, for the 1984 Embassy Annex bombing, the same is true. *See id.* at ¶ 487. The Court, taking judicial notice of evidentiary findings in other cases in this jurisdiction to draw its own conclusions of fact, *see Rimkus*, 750 F. Supp. 2d at 172, agrees.

As the Smith Plaintiffs document in detail, numerous other courts in this district have linked Iran to both the 1983 and 1984 attacks. Because the Court already established that there is a "reasonable connection" between Iran's support for the 1984 Annex attack and injuries suffered by those present at the site of the bombing, *see Barry I*, 410 F. Supp. 3d at 174–75, it will not retread this ground. Here, as in its prior analysis, the Court takes judicial notice of the ample evidence set forth in prior cases and concludes that this evidence is sufficient to "justify a specific finding that defendant[] [Iran] provided support for the 1984 attack on the U.S. Embassy Annex in Lebanon." *Estate of Doe I*, 808 F. Supp. 2d at 16 (citing *Wagner,* 172 F. Supp. 2d at

133; *Welch v. Islamic Republic of Iran*, No. 01-863, 2007 WL 7688043 (CKK) (AK), at *27

(D.D.C. Sept. 20, 2007); *Brewer,* 664 F. Supp. 2d at 54).

Other courts in this district, moreover, have heard relevant testimony and reached the

same conclusion concerning the 1983 attack on the U.S. Embassy in Lebanon. *See Estate of Doe*

*I*, 808 F. Supp. 2d at 15 ("[T]he evidence presented at the *Dammarell* evidentiary trial 'show[ed]

unquestionably that Iran and MOIS provided material support to Hezbollah, and that this support

was the *proximate cause* of the 1983 Beirut embassy bombing and the deaths and injuries that

resulted.'" (emphasis in original) (quoting *Dammarell v. Islamic Republic of Iran* (*Dammarell*

*III),* No. 01-2224 (JDB), 2005 WL 756090, at *6)); *Dammarell v. Islamic Republic of Iran*

(*Dammarell II*), 404 F. Supp. 2d 261, 272 (D.D.C. 2005) (citing expert testimony to support the

conclusion that "the complexity of the attack upon the U.S. Embassy in Beirut evidenced Iran's

central role in the attack"); *Salazar*, 370 F. Supp. 2d at 109 ("[P]laintiff's submissions and the

trial record amply support the allegations . . . [that] Iran, the MOIS, and the IRGC directly and

proximately caused the death of Mr. Salazar" in the 1983 embassy bombing). Based on these

prior evidentiary findings and the filings before it, the Court finds that the Smith Plaintiffs have

established a "reasonable connection" between Iran's support for both the 1983 and 1984 attacks

and their alleged injuries. Thus, the Smith Plaintiffs have satisfied the fourth prong of section

1605A.

In addition, for reasons this Court documented in detail in *Barry I*, this showing suffices

to meet section 1605A's fifth prong: the requirement that claims brought pursuant to the FSIA

must arise out of, as relevant here, "extrajudicial killing . . . or the provision of material support

or resources for such an act." 28 U.S.C. § 1605A(1). Here, the Court concludes that driving a

vehicle laden with explosives into a building filled with U.S. government workers and

contractors (as in the 1983 attack) or detonating such a vehicle in close proximity to a building full of embassy employees (as in the 1984 attack) is plainly an "extrajudicial killing" as set forth in the FSIA. *See* 1605A(h)(7) (defining term by reference to section 3 of the Torture Victim Protection Act of 1991, Pub. L. No. 102-256 § 3(g), 106 Stat. 73 (1992)). Moreover, drawing from the voluminous evidentiary records compiled by other courts in related cases in this Circuit, as described above, the Court further concludes that Iran provided "material support or resources" as defined by the FSIA. *See* 28 U.S.C. § 1605A(h)(3) (providing, in relevant part, that "material support or resources' means any property, tangible or intangible, or service" (referencing 18 U.S.C. § 2339A)).

Accordingly, all of section 1605A's subject matter jurisdictional requirements are met, and Iran's sovereign immunity is waived with respect to the Smith Plaintiffs' claims.

### 2. Personal Jurisdiction

An additional jurisdictional question facing this Court is whether the Smith Plaintiffs have met the FSIA's separate procedural requirements regarding personal jurisdiction. "Personal jurisdiction exists over a non-immune sovereign so long as service of process has been made as required by section 1608" of the statute. *Estate of Heiser v. Islamic Republic of Iran* (*Heiser I*), 466 F. Supp. 2d 229, 255 (D.D.C. 2006) (citation omitted); 28 U.S.C. §1330(b) ("[P]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction . . . where service has been made under section 1608 of this title."). Section 1608 provides four ways to effect service: [1] "special arrangement for service between the plaintiff and the foreign state or political subdivision;" [2] "in accordance with an applicable international convention on service of judicial documents;" [3] in cases where the first two methods do not suffice to effect service, "by sending a copy of the summons and complaint and a

notice of suit" including translations "into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned," or [4] if the third method also fails,

> by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a).

Here, neither option one nor option two applies. The Smith Plaintiffs do not have a "special arrangement" with Iran, nor is there an "applicable international convention." 28 U.S.C. § 1608(a). The Smith Plaintiffs therefore attempted to effectuate service using the third method. *See* Aff., Nov. 17, 2017, ECF No. 15 (request by Smith Plaintiffs' counsel that Clerk of Court mail a copy of the summons, complaint in intervention, and notice of suit by registered mail to the Ministry of Foreign Affairs for the Islamic Republic of Iran); Certificate of Clerk, ECF No. 16 (providing certificate of mailing of requested materials, pursuant to 28 U.S.C. § 1608(a)(3)). When service was not successful with this method, *see* ECF No. 18, the Smith Plaintiffs resorted to the fourth method and requested that the "Clerk dispatch the alternative means of service prescribed by 28 U.S.C. 1608(a)(4)," including service by certified United States mail, return receipt requested, addressed to the U.S. Department of State's Director of Consular Services. Aff., Dec. 22, 2017, ECF No. 20. The Clerk of the Court thereafter indicated that the papers were transmitted by priority mail, return receipt requested, Certificate of Clerk, Dec. 27, 2017, ECF No. 22, and the Smith Plaintiffs later provided notice that the documents were transmitted

through diplomatic channels as the statute requires, *see* Return of Service Affidavit, ECF No. 27

(stating that the "documents were delivered to the Iranian Ministry of Foreign Affairs under

cover of diplomatic note No. 1035-IE, dated and delivered on April 10, 2018").   Thus, the Smith

Plaintiffs have satisfied section 1608's service of process requirements, and the Court may

exercise personal jurisdiction over Defendant.

### B.  Plaintiffs' Eligibility to Bring Section 1605A Claim[9]

One last threshold matter remains before assessing liability: whether the Smith Plaintiffs

are eligible to bring a claim pursuant to section 1605A.[10]   Here, as indicated previously, the

Smith Plaintiffs consist of two categories of individuals: (1) individuals who were employed by

or performing contracts awarded by the U.S. government at the time of one or both attacks, or

the estates of such individuals, and (2) the immediate family members of such directly-injured

individuals, or the legal representatives of these immediate family members. [11]   *See* Mem.

Supporting Smith Pls.' Renewed Mot. 3.  The Court will next consider whether the estates of the

now-deceased Smith Plaintiffs within each of these categories have standing as well as whether

---

[9] In referring to individual Smith Plaintiffs, the Court uses the pseudonym, if any, associated with an individual in the intervenor complaint and subsequent filings.  Where the Smith Plaintiffs indicate that no pseudonym has been assigned to a newly-appointed representative acting on behalf of a deceased claimant, the Court refers to that individual by stating their relationship to the original claimant.

[10] As the Court explained in *Barry I*, this inquiry is essential because "the question [of] whether a statute withdraws sovereign immunity"—as the Court has concluded, for the reasons detailed above, that the FSIA has done in this instance—"is 'analytically distinct' from whether a plaintiff has a cause of action."  410 F. Supp. 3d at 176 (quoting *Owens* 864 F.3d at 807); *see also FDIC v. Meyer*, 510 U.S. 471, 484 (1994); *United States v. Mitchell*, 463 U.S. 206, 218 (1983)).  The Court discusses the relevant theories of liability that might give rise to a cause of action for each of the categories of Smith Plaintiffs *infra* Section IV.B.2.

[11] As noted previously, two of the Smith Plaintiffs, Jane Sister2 ZSmith, *see* Intervenor Compl. ¶ 155, and Jane Sister1 KKSmith, *see* Intervenor Compl. ¶ 227, have filed a notice of voluntary dismissal of their claims, *see* Smith Pls.' Response 2; Notice of Voluntary Dismissal of Claims, ECF No. 51.  Thus, the Court's analysis does not consider these two individuals.

certain now-deceased or incapacitated Smith Plaintiffs may substitute a legal representative or change their previously-selected legal representative.[12]

### 1. Standing of Estates

"When, such as here, an estate-plaintiff brings an action under [the] FSIA's private cause of action, the plaintiff must first establish the estate's standing, or "[its] power . . . to bring and maintain legal claims." *Cohen v. Islamic Republic of Iran*, 238 F. Supp. 3d 71, 85 (D.D.C. 2017) (quoting *Taylor v. Islamic Republic of Iran*, 811 F. Supp. 2d 1, 12–13 (D.D.C. 2011)). The standing of the estate is a "threshold question" that is "governed by the law of the state which also governs the creation of the estate."[13] *Worley*, 75 F. Supp. 3d at 333 (quoting *Taylor*, 811 F.

---

[12] There was previously another sub-category of Smith Plaintiffs: family members who are alive, but who were initially represented by a third party for a reason not discussed in any detail in any of the filings. *See* Mem. Supporting Smith Pls.' Renewed Mot. 1–2 n.1 (noting in passing that certain "Smith Plaintiffs are currently incapacitated"). The Smith Plaintiffs' response to this Court's order for supplementation suggests that all of the living Plaintiffs that were formerly represented by third parties are now proceeding in their individual capacities. Smith Pls.' Response 4–5. These Plaintiffs, who were uniformly Lebanese nationals at the time of the relevant attack(s), *id.* Ex. 2 at 6, Former Representative Information, are John Husband Smith, *see* Intervenor Compl. ¶ 5, Jane Daughter2 Smith, *see id.* ¶ 7; John Brother3 ESmith, *see id.* ¶ 44; John Brother2 NSmith, *see id.* ¶ 97; Jane Sister1 NSmith, *see id.* ¶ 99; Jane Sister2 NSmith, *see id.* ¶ 100; Jane Sister 3 RRSmith, *see id.* ¶ 268; and Jane Sister2 LLLSmith, *see id.* ¶ 402. With this change, with the exception of one legally incompetent Plaintiff, discussed below, the Court reads the Smith Plaintiffs' response to indicate that all Smith Plaintiffs who are not proceeding in their individual capacity are deceased and therefore represented by legal representatives acting on behalf of the estate. In other words, all living and legally competent Smith Plaintiffs sue in their individual capacity, and all legal representatives are acting on behalf of the estate of a deceased or legally incompetent Smith Plaintiff. The following analysis reflects this interpretation of the uncontroverted record before the Court.

[13] The Smith Plaintiffs contend that the Court should not assess this issue because Defendant has not raised it and "the ability of a legal representative to bring a claim after the death of the decedent is not a jurisdictional question." Smith Pls.' Response 7 n.3 (citing *Malvino v. Delluniversita*, 840 F.3d 223, 228 (5th Cir. 2016)). However, the out-of-circuit disposition on which the Smith Plaintiffs' argument relies is not only contrary to the FSIA analysis of myriad district courts in this Circuit, but also represents a RICO-specific judgment that does not stand firmly for the stated proposition concerning the survivability of claims in all instances. *See Malvino*, 840 F.3d at 228 ("Whether the RICO claim survives the injured party's death is thus more accurately viewed as a question of statutory standing."). Moreover, the Smith

Supp. 2d at 12); *see also Lelchook v. Syrian Arab Republic* (*Lelchook II*), No. CV 16-1550 (RC), 2019 WL 2191177, at *1 (D.D.C. Mar. 25, 2019) (quoting *Taylor*, 811 F. Supp. 2d at 12).

With the submission of their response to this Court's October 21, 2019 Order, the Smith Plaintiffs have now provided uncontroverted evidence regarding which state's law governs the creation of each of the estates bringing claims in this suit.[14] *See* Smith Pls.' Response 10–13. Specifically, two estates were created under Florida law;[15] one estate was created under Indiana law;[16] one estate was created under Michigan law;[17] one estate was created under New York

---

Plaintiffs' reliance on language from *Estate of Doe* to argue that Lebanese law permits "an heir of a decedent . . . [to] bring the equivalent of a 'Survival Act' claim under District of Columbia law on behalf of the heirs to recover damages for emotional distress suffered by a decedent before death" is misplaced insofar as it again conflates the standing of the estates with what legal cause of action is brought by the estate. *See* Smith Pls.' Response 13–14 (quoting 808 F. Supp. 2d at 21). This Court reserves judgment as to whether the standing of an estate is jurisdictional in the FSIA context. Here, for the reasons that follow, all of the estates with appointed legal representatives have standing in this suit.

[14] The Smith Plaintiffs appear to argue that—because, on Plaintiffs' theory, each of the immediate family members' claims are "governed uniformly by District of Columbia law"— D.C. state law is the applicable source of law for the analysis of whether the estates have standing. Smith Pls.' Response 8–9. However, this assertion ignores the routine practice of courts in this district, wherein the "threshold question regarding the 'power of the estate to bring and maintain legal claims'" is governed by the "law of the state which also governs the creation of the estate." *Worley*, 75 F. Supp. 3d at 333 (quoting *Taylor*, 811 F. Supp. 2d at 12). The Smith Plaintiffs' contrary argument conflates two distinct legal inquiries: (1) under which state's law, if any, a claim for relief may be established, and (2) whether the estate has standing to bring and maintain the claim in the first instance. The Court addresses the question of which state's law applies to the substantive claims of this category of the Smith Plaintiffs *infra* Section IV.C.

[15] These are the estates of Leo Pezzi Sr. and Mary Donato Pezzi, respectively, *see* Intervenor Compl. ¶¶ 464, 465, whose claims are brought by their son, Leo Rene Pezzi, *see* Representative Information – Estates 4.

[16] This is the estate of Richard L. Korn, *see* Intervenor Compl. ¶ 445, whose claim is brought by his wife, Mildred D. Korn, *see* Representative Information – Estates 4.

[17] This is the estate of John Victim NSmith, *see* Intervenor Compl. ¶ 94, whose claim is brought by his wife, Jane Representative NSmith, *see* Representative Information – Estates 2.

law;[18] one estate was created under Pennsylvania law;[19] two estates were created under Texas law;[20] two estates were created under Syrian law;[21] and the rest of the estates were created under Lebanese law.[22]

---

[18] This is the estate of John Brother1 NNSmith, *see* Intervenor Compl. ¶ 243, whose claim is brought by his wife, *see* Representative Information – Estates 4.

[19] This is the estate of Frances M. Faraci, *see* Intervenor Compl. ¶ 444, whose claim is brought by his son, Philip M. Faraci, Jr., *see* Representative Information – Estates 4.

[20] These are the estates of James Richard Byers, *see* Intervenor Compl. ¶ 438, whose claim is brought by his wife, Jo Ann Byers, *see* Representative Information – Estates 4, and Charlene Bouldin Watson, *see* Intervenor Compl. ¶ 440, whose claim is brought by her granddaughter, Shpwan Watson, *see* Representative Information – Estates 4.

[21] These are the estates of John Father UUSmith and Jane Mother UUSmith, respectively, *see* Intervenor Compl. ¶¶ 280, 281; the claims of both individuals are brought by their daughter, Jane Victim UUSmith, *see* Representative Information – Estates 3.

[22] As discussed in the Smith Plaintiff's Response, these are the estates of Jane Victim Smith, John Victim ASmith, John Father ASmith, John Victim BSmith, Jane Wife BSmith, John Son2 BSmith, John Son3 BSmith, John Victim CSmith, Jane Wife CSmith, Jane Mother CSmith, John Brother1 CSmith, John Brother2 CSmith, John Brother3 CSmith, John Victim DSmith, John Victim ESmith, John Father ESmith, Jane Mother ESmith, JaneSister3 ESmith, John Victim FSmith, John Father FSmith, John Brother5 FSmith, John Victim GSmith, John Victim HSmith, John Brother HSmith, John Victim ISmith, John Father JSmith, John Father KSmith VictimLSmith, Jane Mother KSmith Wife LSmith, Jane Mother LSmith, Jane Mother NSmith, John Brother1 NSmith, John Brother 3 NSmith, John Father QSmith, Jane Mother QSmith, John Brother1 QSmith, Jane Sister1 QSmith, John Father SSmith, Jane Mother SSmith, John Victim TSmith, John Victim USmith, Jane Mother XSmith, Jane Mother ZSmith, John Brother1 ZSmith, John Brother3 ZSmith, John Father AASmith, Jane Mother AASmith, Jane Sister4 AASmith, John Victim BBSmith, Jane Wife CCSmith, Jane Mother DDSmith, Jane Mother EESmith, John Brother2 EESmith, John Father FFSmith, John Victim GGSmith, Jane Wife GGSmith, John Son3 GGSmith, John Father IISmith, Jane Mother IISmith, Jane Victim JJSmith, Jane Mother JJSmith, John Victim KKSmith, Jane Wife KKSmith, John Son1 KKSmith, John Brother KKSmith, John Father LLSmith, Jane Mother LLSmith, John Father NNSmith, Jane Mother NNSmith, John Brother3 NNSmith, Jane Mother OOSmith, Jane Mother PPSmith, John Father QQSmith, Jane Mother QQSmith, Jane Mother SSSmith, John Victim TTSmith, John Victim WWSmith, John Father AAASmith, Jane Mother AAASmith, John Father BBBSmith, Jane Mother CCCSmith, John Brother2 CCCSmith, John Father DDDSmith, John Father FFFSmith, Jane Mother FFFSmith, John Father GGGSmith, Jane Mother GGGSmith, Jane Mother IIISmith, John Brother2 IIISmith, Jane Sister1 IIISmith, Jane Mother JJJSmith, John Victim LLLSmith, John Brother1 LLLSmith, John Brother3 LLLSmith, John Brother4 LLLSmith, Jane Sister1 LLLSmith, Jane Sister3 LLLSmith, John Father MMMSmith, Jane Mother MMMSmith, Jane Mother NNNSmith, John Brother6 NNNSmith, John Victim OOOSmith, and Jane Wife OOOSmith Mother PPPSmith, respectively. *See* ECF No. 48-2.

The Court next considers the applicable laws of each of these domestic and foreign states.[23]  For the reasons forth below, the individuals who serve as legal representatives for the estates of the deceased or otherwise incapacitated Smith Plaintiffs have standing under the governing statutes and/or law of inheritance for each of the respective jurisdictions.

## 2.  Estates Governed by Florida Law

The two estates governed by Florida law are associated with the father and mother, respectively, of Leo Rene Pezzi, an individual who was injured in the 1983 attack and was a plaintiff in *Dammarell II*, 404 F. Supp. 2d 261.  *See* Smith Pls.' Response 10–11, Intervenor Compl. ¶¶ 464, 465.  As the *Dammarell II* court explained, "[b]y statute in Florida, '[n]o cause of action dies with the person.'  Rather, '[a]ll causes of action survive and may be commenced, prosecuted, and defended in the name of the person prescribed by law.'" 404 F. Supp. 2d at 285 (quoting Fla. Stat. Ann. § 46.021 (West 2005)).[24]  The text of this statute remains unchanged.  *See* Fla. Stat. Ann. § 46.021.  Now, as then, "any claim for personal injury, which includes IIED, can be maintained by the personal representative of the claimant once the claimant dies," so long as the personal injury did not cause the claimant's death.  *Dammarell II*, 404 F. Supp. 2d at 285– 86 (citing *ACandS, Inc. v. Redd,* 703 So. 2d 492, 493 (Fla. 3d DCA 1997); Fla. Stat. Ann. § 768.20).  In this instance, because the estates of Mr. Pezzi and Ms. Pezzi seek to recover for

---

[23] The Smith Plaintiffs bring claims for both IIED (in association with directly-injured victims or the immediate family member of such victims) and wrongful death (on behalf of victims killed in one of the attacks).  All of the wrongful death claims, *see* Intervenor Compl. ¶¶ 4, 8, 19, 24, 33, 39, 50, 63, and 68, involve estates governed by Lebanese law, *see* Smith Pls.' Response Ex. 2 at 1–5, Representative Information – Estates.  Thus, the Court's discussion of the law of all other jurisdictions considers only whether the law of the relevant state provides for a personal injury action for IIED and/or solatium.

[24] Although *Dammarell II* was decided before the FSIA was amended and current section 1605A was enacted, the amendments do not bear on this analysis, which involves only the estate's standing under Florida state law.

IIED suffered in association with the non-fatal injury of their son in the 1983 bombing, their estates have standing under Florida law.

### 3. Estates Governed by Michigan Law

Under Michigan state law, as the Smith Plaintiffs note, the general rule is that "[a]ll actions and claims survive death." Smith Pls.' Response 11 (quoting MI ST § 600.2921). An exception applies for a wrongful death action seeking to recover an injury that resulted in death, which "shall not be prosecuted after the death of the injured person except" as statutorily prescribed. MI ST § 600.2921. In this case, the rule and not the exception controls. The estate created under Michigan law represents the claims of an individual who was injured in both the 1983 and 1984 attacks. *See* Smith Pls.' Response Ex. 2 at 2; Special Master R. & R. ¶ 233. There are no allegations that the injury caused the death of the Plaintiff. Thus, his estate has standing under Michigan law.

### 4. Estates Governed by New York Law

For estates governed by New York law, the state's law of estates, powers, and trusts determines whether an estate may bring a personal injury action. *See Anderson v. Islamic Republic of Iran*, 753 F. Supp. 2d 68, 83 (D.D.C. 2010). Under the relevant statutory provision, "[n]o cause of action for injury to person or property is lost because of the death of the person in whose favor the cause of action existed. For any injury an action may be brought or continued by the personal representative of the decedent." N.Y. Est. Powers & Trusts Law § 11-3.2 (McKinney). Moreover, as the *Anderson* court noted, New York's highest state court has emphasized that, under this statute, personal injury causes of actions (not merely claims alleging injuries to property or claims based in contract) survive a decedent's passing. *Heslin v. County of Greene*, 923 N.E. 2d 1111, 1114 n.4 (N.Y. 2010) ("[A]ll tort and contract actions that

belonged to a decedent may now be maintained by the estate's personal representative."). Here, the estate governed by New York State law represents the claims of the brother of an individual directly injured in the 1983 attack. *See* Smith Pls.' Response Ex. 2 at 4; Special Master R. & R. ¶ 243. Under New York state law, his estate has standing to bring all tort actions on his behalf.

### 5. Estates Governed by Texas Law

The two estates governed by Texas law are associated with the brother and sister, respectively, of Rayford Byers, an individual who was injured in the 1983 attack and who was a plaintiff in *Dammarell v. Islamic Republic of Iran*, 404 F. Supp. 2d 261 (D.D.C. 2005).[25] Texas State law provides that a so-called "survival" "cause of action for personal injury to the health, reputation, or person of an injured person does not abate because of the death of the injured person." Tex. Civ. Prac. & Rem. § 71.021(a). "A decedent's personal injury action therefore survives death and may be prosecuted on her behalf." *Taylor*, 811 F. Supp. 2d at 13 (quoting *Elliott v. Hollingshead*, 327 S.W. 3d 824, 833 (Tex. App. 2010)); *see also Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 850 (Tex. 2005) ("Because a decedent's survival claim becomes part of her estate at death, it follows that the estate retains a justiciable interest in the survival action."). Accordingly, the estates governed by Texas law have standing to pursue personal injury claims that the two decedent Smith Plaintiffs could have pursued during their lifetime.

---

[25] The sister, Charlene Bouldin Watson, originally sued in her individual capacity, *see* Intervenor Compl. ¶ 440, but the Smith Plaintiffs indicate that she is now deceased, *see* Smith Pls.' Response 3. The Smith Plaintiffs thus seek the Court's approval for substitution of her granddaughter as a party plaintiff on behalf of her estate. *Id.* Ex. 2 at 4. Under Texas State law, "[a] personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person." Tex. Civ. Prac. & Rem. § 71.021(b). Here, because there is no dispute regarding the identity of the legal representative or the propriety of her representation of the estate, the Court accepts this substitution.

6.  Estates Governed by Syrian Law

Turning now to foreign law, the Syrian laws of inheritance govern the claims of the two deceased Smith Plaintiffs.[26]  These individuals are the mother and father of an individual who was injured in the 1983 attack, *see* Special Master R. & R. 683–85, and their estates are now represented by their daughter, *see* Representative Information – Estates 3.  Under Syrian law, Article 223 of the Syrian Civil Code permits "spouses and relatives of the second degree (which includes parents, children, and siblings, among others)" to "assert a claim for compensation for emotional injuries suffered as a result of death or injury caused to a family member."  Legal Opinion on Syrian Law 1.  Such a claim "survives the decedent's death, and properly may be asserted regardless of whether the decedent instituted the claim before death."  *Id.* at 2.  In this instance, because the daughter of the deceased Smith Plaintiffs whose estates are governed by Lebanese law, representing their estates, asserts a claim for emotional injuries caused by the injury to their son, the estates have standing under Syrian law.

---

[26] To determine questions of foreign law such as those at hand (the standing of estates created under Syrian and Lebanese law), "Federal Rule of Civil Procedure 44.1 permits courts determining foreign law to consider 'any relevant material or source, including testimony, whether or not . . . admissible under the Federal Rules of Evidence.'"  *Lelchook v. Syrian Arab Republic* (*Lelchook I*), No. CV 16-01550 (RC/RMM), 2019 WL 2191323, at *5 (D.D.C. Jan. 31, 2019), *report and recommendation adopted,* No. CV 16-1550 (RC), 2019 WL 2191177 (D.D.C. Mar. 25, 2019).  The Smith Plaintiffs have provided two legal opinions on the relevant law of the foreign jurisdictions that governs some of the estates in this suit.  *See* Smith Pls.' Response, Ex. 3, Legal Opinion on Some Issues Regarding Lebanese Inheritance Law ("Legal Opinion on Lebanese Law"), ECF No. 48-3; *id.* at Ex. 4, Legal Opinion on Certain Issues Regarding Syrian Law ("Legal Opinion on Syrian Law), ECF No. 48-4.  The Smith Plaintiffs indicate therein the qualifications of these experts, and these filings satisfy the Court that the authors of these opinions are qualified to testify as experts, as Federal Rule of Evidence 201 requires.  Thus, the Court's analysis of the standing of the estates governed by foreign law considers the two legal opinions that the Smith Plaintiffs have provided.

7. Estates Governed by Lebanese Law

Before addressing the standing of the estates governed by Lebanese inheritance law, the Court addresses two preliminary issues regarding the legal representatives pursuing these claims.

*a. Substitution of Legal Representatives*

The Smith Plaintiffs' most recent filings present two discrete issues concerning the legal representatives of certain parties. First, for five Smith Plaintiffs who are now deceased and whose estates are governed by Lebanese law, the Smith Plaintiffs move pursuant to Federal Rule of Civil Procedure 25(a) to appoint a legal representative for their estates.[27] *See* Smith Pls.' Mot. to Substitute ("Mot. Substitute"), ECF No. 49. In tandem with this motion, the Smith Plaintiffs seek to substitute a court-appointed legal guardian as the legal representative for one living Plaintiff whom a Lebanese Court declared incompetent.[28] *Id.* at 3. Second, for a number of other deceased Smith Plaintiffs who were previously represented by a third party acting on behalf of the estate, the legal representative has passed away "and/or the heirs have appointed a new legal representative."[29] Smith Pls.' Response 3–4. The Smith Plaintiffs have filed a notice

----

[27] These individuals are John Brother5 FSmith, *see* Intervenor Compl. ¶ 57, for whom the Smith Plaintiffs seek to substitute his wife; John Brother3 NSmith, *see* Intervenor Compl. ¶ 98, for whom the Smith Plaintiffs seek to substitute his wife, *see* Mot. Substitute 1; Jane Sister4 AASmith, Intervenor Compl. ¶ 167, for whom the Smith Plaintiffs seek to substitute her brother, John Victim AASmith, *see* Mot. Substitute 1; John Brother2 EESmith, Intervenor Compl. ¶ 185, for whom the Smith Plaintiffs seek to substitute his brother, John Victim EE Smith, *see* Mot. Substitute 1; and John Brother3 NNSmith, *see* Intervenor Compl. ¶ 245, for whom the Smith Plaintiffs seek to substitute his brother, John Brother2 NNSmith, *see* Mot. Substitute 1.

[28] This individual is Jane Mother FSmith, *see* Intervenor Compl. ¶ 52, for whom the Smith Plaintiffs seek to substitute her son, John Brother2 FSmith, *see* Smith Pls.' Response Ex. 2 at 5, Representative Information – Legally Incompetent Individual.

[29] According to the Smith Plaintiffs' Response, ECF No. 48, the Smith Plaintiffs in this category are John Victim FSmith, *see* Intervenor Compl. ¶ 50; Jane Mother NSmith, *see id.* ¶ 95; John Brother1 NSmith, *see id.* ¶ 96; John Father QSmith, *see id.* ¶ 108; Jane Mother QSmith, *see id.* ¶ 109; John Brother KKSmith, *see id.* ¶ 226; John Father NNSmith, *see id.* ¶ 241; Jane Mother NNSmith, *see id.* ¶ 242; John Brother1 NNSmith, *see id.* ¶ 243; John Father BBBSmith, *see id.* ¶ 326; John Father MMMSmith, *see id.* ¶ 408, and Jane Mother MMMSmith, *see id.* ¶

of these substitutions.  Notice of Substitution of Legal Representatives ("Notice of Substitution"), ECF No. 50.

Taking these issues in turn, the Court next considers the Smith Plaintiffs' motion to substitute legal representatives for the Smith Plaintiffs who have passed away since the filing of the intervenor complaint.  ECF No. 49.  "A deceased individual" such as these Smith Plaintiffs "cannot serve as the real party in interest in a civil action." *Mohammadi*, 947 F. Supp. 2d at 54 n.2 (citing Fed. R. Civ. P. 25(a)(1)).  If, as here, "a party dies during litigation, Rule 25 allows for the substitution of a proper party.  It states that once a formal suggestion of death is made on the record, a party or the decedent's successor or representative has 90 days in which to file a motion for substitution of a proper party." *Worley*, 75 F. Supp. 3d at 333.  In this case, no formal notice has been filed; instead, the Smith Plaintiffs have indicated in their response to the Court that certain Plaintiffs are deceased.  Smith Pls.' Response 2.  Notwithstanding the lack of formal statement of death, "the Court may, *sua sponte*, substitute an appropriate person, such as a close relative, as a representative of' the decedent's estate." *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 22 n.17 (D.D.C. 2016) (quoting *Mohammadi*, 947 F. Supp. 2d at 55).  Moreover, as the *Mohammadi* court explained, Federal Rule of Civil Procedure "25(a)(1) itself provides that '[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper

---

409.  As mentioned previously, one estate in this category, that of John Brother1 NNSmith, is governed by New York law.  *See* Representative Information – Estates 3.  The estates of all of the other individuals in this category are governed by Lebanese law.  *See generally id*.

Based on the Court's review of the submitted materials, most of the substituted legal representatives are an immediate family member (specifically, a brother, daughter, or son) or a surviving spouse.  *See* Legal Representatives – Estates.  The substituted legal representatives for John Brother1 NSmith and John Brother KKSmith are the nephews of each of these individuals, and the substituted legal representative for both John Father MMMSmith and Jane Mother MMMSmith is the grandson of these individuals.

party.'" 947 F. Supp. 2d at 54 n.2. With these principles in mind, the Court grants the Smith Plaintiffs' motion to substitute legal representatives for the now-deceased Plaintiffs.[30]

The Court also finds the substitution of a legal representative for a legally incompetent plaintiff to be procedurally authorized by Federal Rule of Civil Procedure 25(b). Rule 25(b) states that, "[i]f a party becomes incompetent, the court may, on motion, permit the action to be continued by . . . the party's representative."[31] Here, the Smith Plaintiffs present uncontroverted evidence that Plaintiff Jane Mother FSmith was deemed legally incompetent by a Lebanese court, and that this court appointed her son, John Brother2 FSmith, as her legal guardian and representative in this action. Smith Pls.' Response 2. The Smith Plaintiffs have filed a motion to make this substitution. *See* Mot. Substitute. Upon consideration of these materials, the Court permits Plaintiff Jane Mother FSmith's claims to be continued by her court-appointed legal representative.

The Court turns now to the second preliminary matter: the deceased Smith Plaintiffs for whom the original legal representatives have passed away and/or the heirs have appointed a new legal representative. Smith Pls.' Response 3–4; *see also* Notice of Substitution. As stated previously, the law of this Circuit authorizes substitution of "'an appropriate person, such as a close relative, as a representative of' the decedent's estate," including *sua sponte* substitution by

---

[30] For one recently-deceased individual, the heirs have not yet appointed a representative of the estate. *Id.* at 8. Because a deceased individual is not a proper party, *see* Fed. R. Civ. P. 25(a); *Mohammadi*, 947 F. Supp. 2d at 54 n.2 (citing Fed. R. Civ. P. 25(a)(1)), the Court will hold the claims of John Brother6 NNNSmith in abeyance pending this appointment. *See* Intervenor Compl. ¶ 420.

[31] Federal Rule of Civil Procedure 25 additionally requires that any such motion be "served on the parties as provided in Rule 5." Fed. R. Civ. 25(a)(3). As relevant here, Rule 5 states that "no service is required on a party who is in default for failing to appear." Fed. R. Civ. P. 5(a)(2). Defendant Iran has not appeared in this suit, and the Clerk of the Court has entered default as to Iran with respect to the Smith Plaintiffs. Clerk's Entry of Default, ECF No. 31. Thus, the Smith Plaintiffs need not take further action, beyond filing a motion, to comply with Rule 25(b).

the Court without a formal motion. *Bluth*, 203 F. Supp. 3d at 22 n.17 (citing *Mohammadi*, 947 F. Supp. 2d at 55).

In this case, there has been no motion to substitute; thus, the Court must determine whether to permit the substitutions of which the Smith Plaintiffs have provided notice. To determine whether the substituted individuals are appropriate representatives of the decedents' estates, the Court looks to the Legal Opinion on Lebanese Law that governs the creation of the estates. "Under Lebanese law, there is no formal judicial or administrative process for . . . the appointment of an estate representative;" rather, "the heirs of the decedent acquire their inheritance rights *ipso jure*" and "are entitled to invoke the rights of the decedent and their own rights as heirs without further formalities." Legal Opinion on Lebanese Law 1. Moreover, "any group of a decedent's heirs may agree to the appointment of an individual as the representative of the heirs." *Id.* at 2. Applying these principles, because the Smith Plaintiffs state that each of the newly-appointed representatives was substituted at the heirs' discretion, Smith Pls.' Response 3–4, these individuals may carry forth the claims brought by the decedents' respective estates.[32] Thus, the Court approves these substitutions. The record before the Court, accordingly, indicates that all claims brought by Smith Plaintiffs who are not proceeding in their individual capacity are represented by an authorized third party. The Court now addresses whether the estates governed by Lebanese law have standing to pursue these claims.

---

[32] The same is true for John Brother1 NNSmith, whose estate is governed by New York law. As discussed previously, New York law permits a personal representative of the decedent to continue a personal injury action. N.Y. Est. Powers & Trusts Law § 11-3.2 (McKinney). Here, the Smith Plaintiffs indicate that this individual is now represented by his wife. *See* Representative Information – Estates 3. There is no dispute in the record before the Court regarding the identity of the legal representative or the propriety of her representation of the estate.

Lebanese law both recognizes a cause of action for the emotional distress caused by the death or injury of an immediate family member and provides that a claim for compensation for such emotional distress survives the passing of the individual and may be asserted by the decedent's heir(s). Legal Opinion on Lebanese Law 2. More precisely, pursuant to Article 134 of the Code of Obligations and Contracts, "emotional distress may be compensated provided that" the claimant and the initial victim share either "a legitimate kinship" based on an immediate family relationship "or [a] marriage alliance." *Id.* Where such a relationship or a "marriage alliance" exists, upon the death of the original claimant, the emotional distress that the claimant suffered is considered to be "automatically transferred to his or her heirs by operation of law," authorizing the heirs to assert the claim for compensation on behalf of the decedent. *Id.* In short, then, "Lebanese law allows for the award of compensation for 'moral damages,' such as emotional distress, suffered as the result of the wrongful death or tortious injury of an immediate relative," *Estate of Doe I*, 808 F. Supp. 2d at 21, and the estate of the original claimant has standing to pursue the claim. Here, because all of the estates governed by Lebanese law assert a claim for emotional injuries caused by the injury to or death of an immediate family member, the estates have standing to pursue the claims of the deceased Smith Plaintiffs. The Court next considers what legal standard governs the claims of all of the Smith Plaintiffs.

## C. Liability

With these jurisdictional matters in hand, the Court is now ready to address the question of liability. As the Court explained in *Barry I*, "although section 1605A creates a private right of action for claimants who meet its other requirements, a FSIA plaintiff must further "prove a theory of liability to establish a claim for relief that entitles them to damages." 410 F. Supp. 3d

at 176 (first quoting *Valore*, 700 F. Supp. 2d at 73, then citing *Rimkus*, 750 F. Supp. 2d at 175–76); *see also Owens I*, 864 F.3d at 807 (citing *FDIC v. Meyer*, 510 U.S. 471, 484 (1994); *United States v. Mitchell*, 463 U.S. 206, 218 (1983)) ("[T]he question [of] whether a statute withdraws sovereign immunity is 'analytically distinct' from whether a plaintiff has a cause of action."). As detailed below, the theory of liability that each Smith Plaintiff may raise depends on the claimant's identity. Again, the Smith Plaintiffs fall into two categories: (1) Plaintiffs who were directly injured in one or both of the attacks, and (2) the immediate family members of these individuals, the majority of whom are not U.S. nationals. For the following reasons, all of the Smith Plaintiffs state a valid claim under the FSIA, though the formal means by which the two categories of Smith Plaintiffs do so is distinct.[33]

### 1. Directly-Injured Smith Plaintiffs

The directly-injured Smith Plaintiffs' claims are directly governed by FSIA's private right of action. This private right of action, codified in its present form at section 1605A(c), "limits claimants" to individuals who, at the time of the attack, fell within a category enumerated by the statute, or the legal representative of such an individual. *See Owens I*, 864 F.3d at 805, 807 ("§ 1605A(c) authorizes a cause of action not only for . . . [the enumerated] groups but also for the legal representative of a member of those groups."). The enumerated categories, as relevant here, cover "an employee of the Government of the United States, or . . . an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment." 28 U.S.C. § 1605A(c). As the Smith Plaintiffs state, and as the Court's review of Special Master's findings of fact confirm, the individuals who seek relief

---

[33] For concision, the Court uses the term "Smith Plaintiff" or "Smith Plaintiffs" to refer both to plaintiffs who pursue claims in their individual capacity and those who are represented by a third party acting on behalf of a deceased individual's estate or on behalf of a legally incapacitated individual.

based on the direct injury to them during the attack fall within this provision.  *See* Smith Pls.'

Response 6; *see generally* Special Master's R. & R.  Thus, these plaintiffs may draw directly on

section 1605A(c) to establish a cause of action, but still must establish the theoretical basis that

underpins the allegation of liability.

Plaintiffs who seek relief in section 1605A actions "'generally' turn to 'the lens of civil

tort liability'" to articulate the "justification for such recovery."  *Barry I*, 410 F. Supp. 3d at 176

(quoting *Rimkus*, 750 F. Supp. 2d. at 175–76; *see also, e.g., Schertzman Cohen*, 2019 WL

3037868, at *5 (discussing *Valore* and *Rimkus*).  "Based on the D.C. Circuit's guidance, district

courts in this jurisdiction 'rely on well-established principles of law, such as those found in the

Restatement (Second) of Torts . . .' to define the elements and scope of these theories of

recovery."  *Worley*, 75 F. Supp. 3d at 335 (quoting *Oveissi III*, 879 F. Supp. 2d at 54); *see*

*also Fraenkel v. Islamic Republic of Iran*, 892 F.3d 348, 353 (D.C. Cir. 2018) ("The courts are

not authorized to craft a body of federal common law in deciding FSIA terrorism exception

cases.  However, a district court may rely on well-established statements of common law."

(citing *Bettis*, 315 F.3d at 333)).  As it did in *Barry I*, the Court follows this approach to address

the claims of the Smith Plaintiffs who fall within section 1605A's enumerated categories.

The Smith Plaintiffs' complaint moves for relief under several common law theories of

liability.[34]  Two are relevant for the Court's analysis of liability with respect to the directly-

_____

[34] In addition to the causes of action discussed in the body of this opinion, Count I seeks
compensatory damages pursuant to "28 U.S.C. § 1605A(c), Private Right of Action."  Intervenor
Compl. ¶¶ 489–95.  As discussed above and in *Barry I*, the FSIA "'provides a private right of
action' without any 'guidance on the substantive bases for liability to determine plaintiffs'
entitlement to damages.'"  410 F. Supp. 3d at 177 (quoting *Braun*, 228 F. Supp. 3d at 78).  The
text of Count I alleges that the Smith Plaintiffs "suffered, *inter alia*, death, physical pain and
suffering, mental anguish, emotional pain and suffering, loss of solation [sic], loss of consortium,
and/or economic losses," Intervenor Compl. ¶ 493, and seeks compensatory damages for these
injuries, *id.* ¶ 495.  Because these claims for relief and the underlying factual allegations overlap

injured Smith Plaintiffs. First, the Smith Plaintiffs allege intentional infliction of emotional distress caused by "[t]he acts of detonating an explosive device at the U.S. Embassy in Lebanon on April 18, 1983, and on September 20, 1984."[35] Intervenor Compl. ¶¶ 496–501. Second, the personal representatives of those fatally injured in one of the attacks bring "wrongful death/survival claims" and seek to recover damages for Defendant's conduct. *Id.* ¶¶ 502–06. The Court considers each basis for liability in turn.

### a. IIED Claims of Directly-Injured Smith Plaintiffs

Taking the IIED claims first, general principles of tort law provide that "a defendant is liable for IIED if its 'extreme and outrageous conduct intentionally or recklessly causes severe emotional distress' to a plaintiff." *Barry I*, 410 F Supp. 3d at 177 (quoting Restatement (Second) of Torts § 46(1); *see also Roth*, 78 F. Supp. 3d at 400 (quoting *Heiser II*, 659 F. Supp. 2d at 26). The same analysis that this Court applied in *Barry I* with respect to the Barry Plaintiffs applies with equal force for the directly-injured Smith Plaintiffs. Here, as there, "[t]he first element of the IIED tort—an extreme or outrageous act that is intended to cause severe emotional distress—

---

with the other counts of the Smith Plaintiffs' complaint, and because a plaintiff may not recover twice for allegations that arise from the same predicate acts, *see Kassman v. Am. Univ.*, 546 F.2d 1029, 1034 (D.C. Cir. 1976), the Court does not read Count I as presenting a separate theory of liability for any of the Smith Plaintiffs and considers it no further.

[35] The Smith Plaintiffs also move, under a separate count, for compensatory damages for loss of solatium and/or loss of consortium. Intervenor Compl. ¶¶ 507–11. Because, "[i]n the context of a suit under the FSIA, courts in this Circuit have found IIED and solatium claims to be "indistinguishable,'" *Lelchook v. Syrian Arab Republic* (*Lelchook III*), No. CV 16-1550 (RC), 2019 WL 4673849, at *4 (D.D.C. Sept. 25, 2019) (quoting *Estate of Heiser v. Islamic Republic of Iran* (*"Heiser II"*), 659 F. Supp. 2d 20, 27 n.4 (D.D.C. 2009)), and because, "[w]here there has been only one injury, the law confers only one recovery, irrespective of the multiplicity of ... theories which the plaintiff pursues," *Kassman*, 546 F.2d at 1034, the Court considers only the IIED count with respect to all of the Smith Plaintiffs. The Court separately discusses solatium as a remedy authorized by the FSIA *infra* Part IV.D. *See* 29 U.S.C. § 1605A(c) (stating that damages in suit pursuant to the statute's private cause of action "may include economic damages, solatium, pain and suffering, and punitive damages").

is plainly met" because an act of terrorism is, "[b]y its very definition, . . . 'extreme and outrageous and intended to cause the highest degree of emotional distress.'" *Barry I*, 410 F. Supp. 3d at 177 (quoting *Valore*, 700 F. Supp. 2d at 77); *see also Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009)). Accordingly, the Court finds it self-evident that Iran's role in both the 1983 and 1984 bombings was "intended to cause the highest degree of emotional distress[:]" "terror." *Heiser II*, 659 F. Supp. 2d at 26.

The Smith Plaintiffs have, moreover, satisfied the second element of an IIED tort, which requires evidence that Iran's provision of material support or resources for the attacks caused them "severe emotional distress." The Special Master's findings of fact make clear that the attack directly caused a grave immediate and ongoing psychological toll. *See generally* Special Master's R. & R. Based on the undisputed record before it, the Court finds that these materials "establish . . . [the directly-injured Smith Plaintiffs'] claim or right to relief by evidence satisfactory to the court," 28 U.S.C. § 1608(e), in the manner that the FSIA demands. Thus, applying general IIED tort law principles in the FSIA context, the Court concludes that the directly-injured Smith Plaintiffs have established liability for this aspect of their claim.

### b. *Wrongful Death Claims of Directly-Injured Smith Plaintiffs*

The estates of nine individuals killed in one of the attacks also pursue relief under a wrongful death cause of action.[36] *See* Intervenor Compl. ¶¶ 4, 8, 19, 24, 33, 39, 50, 63, 68. "A

---

[36] Although styled as a "wrongful death/survival claim," these two theories of liability are substantively distinct under generally applicable tort law principles. *Compare* Restatement (Second) of Torts § 925 (1979) *with id.* § 926. Whereas a wrongful death action provides a "measure of damages for causing the death of another," as typically established by a statute creating the right of action, *id.* § 925, "[a] survival action accrues upon the death of an injured person and 'limits recovery for damages for loss or impairment of earning capacity, emotional distress and all other harms, to harms suffered before death,'" *Estate of Hirshfeld v. Islamic Republic of Iran*, 330 F. Supp. 3d 107, 139 (D.D.C. 2018) (quoting Restatement (Second) of Torts § 926). In this case, the Court reads the plain text of the intervenor complaint and the

wrongful-death action is one brought by a decedent's heirs at law, and may be brought through the estate of the decedent, 'for economic losses which result from a decedent's premature death.'" *Roth*, 78 F. Supp. 3d at 400 (quoting *Valore*, 700 F. Supp. 2d at 78); *see also Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 27 (D.D.C. 1999). General tort law principles provide that "[v]ictims may recover for their wrongful deaths if they can establish that the defendant[] caused their deaths."

A number of courts in this district have distilled the generally applicable principles of a wrongful death tort in the context of FSIA suits. These courts have determined that a plaintiff may recover for wrongful death upon a showing that the defendant caused the plaintiff's death. *See, e.g.*, *Hirshfeld*, 330 F. Supp. 3d at 139 (citing Restatement (Second) of Torts § 925); *Braun*, 228 F. Supp. 3d at 79; *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 39 (D.D.C. 2016); *Valore*, 700 F. Supp. 2d at 78; *see also* Restatement (Second) of Torts § 925, cmt. a (discussing history of wrongful death statutes and noting that English statute was enacted to provide personal representatives of deceased parties with "a cause of action against the one who tortiously caused the death, provided that the deceased would have had a cause of action if he had been merely injured and not killed"). Applying this analysis here, for the reasons detailed in the Court's analysis of the FSIA's waiver of sovereign immunity, *supra* Part IV.A.1.b, the Court finds that the Smith Plaintiffs fatally injured in one of the attacks have established that Defendant caused

---

associated filings to present only a wrongful death cause of action. Specifically, this count of the Smith Plaintiffs' complaint alleges that Defendant "caused an explosive device to detonate" in both 1983 and 1984, Intervenor Compl. ¶¶ 503–04, and that, "as a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Defendant, certain individuals, who are represented herein as Plaintiffs by their personal representatives, were fatally injured," *id.* ¶ 505. There are no allegations that relief is sought for these individuals' pain and suffering before death (the basis for a survival action), nor do any of the findings of fact speak to this point. Thus, the Court considers only whether these Smith Plaintiffs have established a wrongful death theory of liability.

their deaths. Furthermore, each of the claims is presented by the personal representative of that

fatally-injured individual's estate. Thus, the directly-injured Smith Plaintiffs have established

liability for their wrongful death claim.

Accordingly, all of the directly-injured Smith Plaintiffs have provided evidence to

support entry of default judgment in their favor for both their IIED and wrongful death claims.

2. Immediate Family Member Smith Plaintiffs[37]

The Court is thus left with the claims of the immediate family members, who (with the

exception of several U.S. nationals), do not fall within the enumerated section 1605A(c)

categories. [38] As the *Estate of Doe I* court explained, although "those plaintiffs who are foreign

national family members of victims of the terrorist attacks in Beirut lack a federal cause of

action[,] . . . they may continue to pursue claims under applicable state and/or foreign law." 808

F. Supp. 2d at 20. This is so because section 1605A's creation of a new cause of action "did not

displace a claimant's ability to pursue claims under applicable state or foreign law upon the

waiver of sovereign immunity." *Id.* (citation omitted) (citing *Simon v. Republic of Iraq,* 529 F.3d

1187, 1192 (D.C. Cir. 2008), *rev'd on other grounds,* 556 U.S. 848 (2009)); *see also* 28 U.S.C. §

1606 (stating that, once waiver of sovereign immunity is established under section 1605, "the

---

[37] Because, as the Court established above, the wrongful death actions are brought
"through the estate of the decedent," *Valore*, 700 F. Supp. 2d at 78 (quoting *Flatow*, 999 F. Supp.
at 27), and not on behalf of the immediate family member plaintiffs (all of whom bring
independent claims in association with the claims of an immediate family member who was
directly harmed by one or both attacks), only the IIED cause of action is relevant for this
category of Smith Plaintiffs.

[38] The Smith Plaintiffs' filings and the Special Master's findings of fact suggest that some
immediate family member Smith Plaintiffs were U.S. nationals at the time of the attack. *See,
e.g.*, Intervenor Compl. ¶¶ 446–49. Such individuals fall within section 1605A(c)'s enumerated
categories in the manner discussed above for the directly-injured Smith Plaintiffs. However,
because—as the Court discusses next—the substantive IIED theory of relief that applies to U.S.
national immediate family members is functionally identical to the substantive IIED theory of
relief that applies to non-U.S. national immediate family members, the Court addresses these
individuals' claims together in the following analysis.

foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances"); *Oveissi v. Islamic Republic of Iran* (*Oveissi I*), 573 F.3d 835, 841 (D.C. Cir. 2009) (quoting 28 U.S.C. § 1606). Thus, the Court will first conduct a choice of law analysis and then proceed to evaluate whether the Smith Plaintiffs have established liability under the relevant substantive standard.

*a. Choice of Law*

As the Circuit explained in *Oveissi I*, "courts considering issues governed by state substantive law in FSIA cases," such as the claims at issue here, "should apply the choice-of-law rules of the forum state." 573 F.3d at 841. Accordingly, this Court applies the District of Columbia's choice-of-law rules to determine the applicable legal standard for the immediate family members' claims. *Accord Estate of Doe I*, 808 F. Supp. 2d at 20 (invoking District of Columbia choice-of-law rules in similar FSIA suit) (citing *Oveissi I*, 573 F.3d at 840; *Dammarell II,* 2005 WL 756090, at *18).

District of Columbia choice-of-law principles set forth a two-part analysis. First, the court is to "determine if a conflict exists between the law of the forum and the law of the alternative jurisdictions." *Id.* (citing *USA Waste of Md., Inc. v. Love* (*Love*), 954 A.2d 1027, 1032 (D.C. 2008)). "A 'no conflict' situation arises 'when the laws of the different jurisdictions are identical or would produce the identical results on the facts presented.'" *Barimany v. Urban Pace LLC*, 73 A.3d 964, 967 (D.C.2013) (quoting *Love*, 954 A.2d at 1032); *see also Thuneibat*, 167 F. Supp. 3d at 41–42 (discussing standard set forth in *Barimany* and *Love*).

The second step comes into play "if a conflict is present;" in such instances, "the District of Columbia employs a "constructive blending of the government interests analysis and the most significant relationship test to determine which law to apply." *Id.* (internal quotation marks

omitted) (quoting *Oveissi I,* 573 F.3d at 842; *Dammarell II,* 2005 WL 756090, at *18). The

governmental interests analysis requires a court to "evaluate the governmental policies

underlying the applicable laws and determine which jurisdiction's policy would be most

advanced by having its law applied to the facts of the case under review." *Oveissi I*, 573 F.3d at

842 (quoting *Hercules & Co., Ltd. v. Shama Rest. Corp.,* 566 A.2d 31, 41 (D.C. 1989)). The

most significant relationship test requires a court to "consider the factors enumerated in the

Restatement [(Second) of Conflict of Laws] § 145." *Hercules*, 566 A.2d at 40. "The four

Restatement factors are: (1) 'the place where the injury occurred'; (2) 'the place where the

conduct causing the injury occurred'; (3) 'the domicil[e], residence, nationality, place of

incorporation and place of business of the parties'; and (4) 'the place where the relationship, if

any, between the parties is centered.'" *Oveissi I*, 573 F.3d at 842 (quoting Restatement (Second)

of Conflict of Laws § 145(2) (1971)). In addition, as the *Estate of Doe I* court explained, "[t]he

Restatement also references the 'needs of the interstate and the international systems, the

relevant policies of the forum, the relevant policies of other interested states, certainty,

predictability and uniformity of result, and ease in the determination and application of the law to

be applied.'" 808 F. Supp. 2d at 20–21 (quoting Restatement (Second) of Conflict of Laws §

145) (citing *Oveissi I,* 573 F.3d at 842; *Heiser I,* 466 F. Supp. 2d at 266). "As a general rule, the

law of the forum governs, 'unless the foreign state has a greater interest in the controversy.'"

*Thuneibat*, 167 F. Supp. 3d at 41–42 (quoting *Kaiser–Georgetown Cmty. Health Plan v.

Stutsman,* 491 A.2d 502, 509 (D.C. 1985).

This case presents three possible sources of law to apply: the law of the forum state (the

District of Columbia), the law of the state where the underlying tort occurred (Lebanon), or the

domicile of each respective plaintiff (whether foreign or domestic). For the reasons set forth

below, the Court finds United States domestic law to be the most appropriate source of law, and further concludes that the District of Columbia's law properly supplies the substantive standard that governs the pending claims.

The first choice-of-law issue facing this Court is whether there is a conflict between the law of the forum state and the law of the alternative jurisdictions. In answering this question, the Court finds the *Estate of Doe I* court's analysis under similar facts compelling. That court faced an identical choice—whether to apply the law of the forum (District of Columbia) or the law that governed the location of the tortious conduct (Lebanon) to the claims of "non-U.S. national [FSIA] plaintiffs who worked for the U.S. Government (and their non-U.S. national family members)," 808 F. Supp. 2d at 11—and found that there was "no clear conflict of law," *id.* at 21. Specifically, noting that "District of Columbia law parallels Lebanese law regarding the availability of a claim for emotional distress, solatium, and/or consortium related to the wrongful death or tortious injury of an immediate relative;" that "Lebanese law allows for the award of compensation for moral damages, such as emotional distress, suffered as the result of the wrongful death or tortious injury of an immediate relative," and that Lebanese law permits "an heir of a decedent . . [to] bring the equivalent of a 'Survival Act' claim under District of Columbia law[, D.C. Code § 12–101,] on behalf of the heirs to recover damages for emotional distress suffered by a decedent before death," that court concluded that "the laws of the different jurisdictions . . . would produce the identical result on the facts presented." *Id.* (internal citations and quotation marks omitted) (quoting *USA Waste,* 954 A.2d at 1032).

Here, the Legal Opinion on Lebanese Law provided to the Court and the Court's own read of District of Columbia law confirms the *Estate of Doe I* court's conclusions. As stated previously, Lebanese law "expressly provides that emotional distress may be compensated

provided that a legitimate kinship or marriage alliance is established between the claimant and the initial victim."  Legal Opinion on Lebanese Law 2.  This cause of action is available to immediate family members, such as the Smith Plaintiffs.  *Id.*  Furthermore, the heirs of a deceased individual may seek compensation for "emotional distress suffered by the decedent," and "any group of a decedent's heirs" can appoint a legal representative of the heirs "for purposes of submitting . . .[, *inter alia*,] a claim for compensation for emotional distress suffered by a decedent prior to his or her death."  *Id.* (citing Criminal Court of Metn, decision no. 171/1987, undated, Journal *Al Adl*, 1987, Issue 2, p. 226).  Along similar lines, District of Columbia law provides that, for any individual "in whose favor . . . a right of action has accrued for any cause prior to his death," that right of action "survives in favor of . . . the legal representative of the deceased."  D.C. Code § 12-101 (1963).  Thus, where an individual (or the legal representative of that individual) seeks compensation for emotional distress, solatium, or loss of consortium suffered as a result of the death or injury of an immediate family member, there is no conflict between what Lebanese law and what District of Columbia law provide.  This conclusion cuts in favor of the Court's application of the law of the forum state.

So, too, do other considerations that might tilt towards applying the law of other jurisdictions—whether Lebanon or the domicile of any of the Smith Plaintiffs.[39]  In cases where

---

[39] The Smith Plaintiffs have not indicated the domicile of each individual seeking relief, nor do the Special Master's findings of fact explicitly provide this information.  Based on the materials before it, particularly the information regarding the nationality of each deceased plaintiff at the time of the attacks and the time of death, *see* Representative Information – Estates, ECF No. 48-2, and making reasonable inferences from the Special Master's findings of fact, it appears that the majority of the immediate family members remain in Lebanon and that several others either presently reside or resided at the time of their death in Florida, Michigan, New York, or Texas.  For the reasons that follow, the Court continues the emerging practice of courts in this Circuit in the wake of the 2008 FSIA amendments and finds it appropriate to apply the law of the forum state—the District of Columbia—in lieu of the law of the other potential jurisdictions.  The Court notes, moreover, that the two individuals whose estates are governed by

there is conflict between different jurisdictions whose laws might apply, the first prong of the District of Columbia's choice-of-law test, the "governmental interests" analysis, requires the court to "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." *Abedini v. Gov't of Islamic Republic of Iran*, No. CV 18-588 (JEB), 2019 WL 5960545, at *8 (D.D.C. Nov. 13, 2019) (quoting *Estate of Doe I*, 808 F. Supp. 2d at 20).

These policy considerations, while not alone dispositive, cut strongly in favor of applying domestic law here. In general, in a terrorism case such as this one, "[t]he United States has a unique interest in having its domestic law — rather than the law of a foreign nation — used in the determination of damages." *Id.* (quoting *Holland v. Islamic Republic of Iran*, 496 F. Supp. 2d 1, 22 (D.D.C. 2005)) (citing *Oveissi I*, 573 F.3d at 843). And in this case in particular, the further policy interest in "uniformity of result" makes it appropriate to apply D.C. law, "as individual plaintiffs domiciled in different states and foreign nations will all be subject to the same substantive law." *Estate of Doe I*, 808 F. Supp. 2d at 22–23. The legislative history of the FSIA itself indicates that these considerations are to be taken especially seriously. Although courts in this Circuit often applied the law of individual plaintiffs' domiciles before Congress's 2008 amendments to the FSIA, *see, e.g.*, *Dammarell II,* 2005 WL 756090, these amendments "were directed, in part, to correct the problem of 'disparity among the various state laws regarding the recovery of emotional distress by immediate family members.'" *Estate of Doe I*, 808 F. Supp. 2d at 23 (citing 154 Cong. Rec. S54 (daily ed. Jan. 22, 2008) (statement by Sen. Lautenberg)); *see also Abedini*, 2019 WL 5960545, at *8 (discussing Congress's intent to "make

---

Syrian law were joint U.S. and Syrian nationals at the time of death. *See id.* at 3. Because the legal opinions provided to the Court make clear that Syrian and Lebanese law are quite similar in all relevant respects, and there is no U.S.-Lebanese conflict here, there is not a clear conflict between domestic law and the law of any foreign jurisdiction.

FSIA damages more consistent" in enacting the 2008 amendments).  Thus, the governmental interests analysis favors application of D.C. law.

The "most significant relationship" portion of the choice-of-law analysis is less clear-cut. Two of the four factors identified by the Restatement, *see Oveissi I*, 573 F.3d at 842 (quoting Restatement (Second) of Conflict of Laws § 145(2) (1971)), namely the location of injury and the location of conduct causing the injury, point to Lebanon.  The third factor, which considers the parties' domicile, residence, or nationality, *see id.*, also points to non-D.C. jurisdictions.  The fourth factor, "the place where the relationship, if any, between the parties is centered," *id.*, does not cut clearly in any direction.  However, these factors are not hard and fast rules.  Especially where, as here, an injury is "caused by distant conduct[,]. . .  the Court turns to "certainty, predictability and uniformity of result."  *Abedini*, 2019 WL 5960545, at *8 (quoting *Estate of Doe I*, 808 F. Supp. 2d at 21).  Although concerns such as uniformity "cannot prevail when another location otherwise has 'a significantly greater interest than does the District' in the cause of action," *Estate of Doe I*, 808 F. Supp. 2d at 23 (quoting *Dammarell II,* 2005 WL 756090, at *20), this is not such a case.  To the contrary: in this case, as discussed in the governmental interests analysis, "the 2008 FSIA amendments—and the stated goal of those amendments to promote uniformity—serve to increase the interest in applying District of Columbia substantive law."  *Id.*  Thus, this Court is persuaded that the proper approach here is to apply the standards of liability set out by D.C. law to the immediate family members' claims.

*b. Liability under District of Columbia Law*

The Court next applies District of Columbia law to the immediate family members' claims for intentional infliction of emotional distress.[40] "D.C. law [for an IIED claim] enables foreign-national family members of terrorist attack victims, including spouses, to recover solatium damages when their allegations are reinforced by the evidence." *Cohen*, 238 F. Supp. 3d at 86 (first citing *Wamai v. Republic of Sudan*, 60 F.Supp.3d 84, 89–90 (D.D.C. 2014), then quoting *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002)). The District of Columbia's highest state court has confirmed that the IIED elements established in the Restatement (Second) of Torts provide the proper standard to apply.[41] *Republic of Sudan v. Owens* (*Owens III*), 194 A.3d 38, 41 (D.C. 2018). As the *Owens III* court explained, the "elements of an IIED claim arising from injury to a member of the plaintiff's immediate family" are established by § 46 of the Restatement, which sets out the following elements of IIED liability:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
>
> (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
> > (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
> > (b) to any other person who is present at the time, if such distress results in bodily harm."

---

[40] For the reasons discussed above, this is the only theory of liability that (1) pertains to this category of individuals and (2) is not duplicative of the underlying basis of the IIED claim for relief.

[41] In *Owens III*, the D.C. Court of Appeals answered a question that the Circuit certified to it in *Owens II*: "Must a claimant alleging emotional distress arising from a terrorist attack that killed or injured a family member have been present at the scene of the attack in order to state a claim for intentional infliction of emotional distress?" 864 F.3d at 812.

*Id.* (quoting Restatement (Second) of Torts § 46 (1968)).

Affirming that it, and other District of Columbia state courts, "ha[ve] embraced the Restatement Second's approach to IIED liability," *id.*, the *Owens III* court went on to clarify that a claimant who alleges emotional distress arising from a terrorist attack that injured or killed a family member need not have been present at the scene of the attack to state a cognizable IIED claim for relief, *see id.* at 42–45. In other words, the court "held that when emotional distress is caused by conduct directed at a member of a plaintiff's family, the plaintiff must," as a general rule, be "present at the time" of the conduct in order to make out an IIED claim[,]" but also "carved out" what it called 'the FSIA Terrorism Exception' to the presence requirement" in the limited context of "cases brought under § 1605A," *Owens v. Republic of Sudan* (*Owens IV*), 924 F.3d 1256, 1259 (D.C. Cir. 2019) (quoting *Owens III*, 194 A.3d at 41, 42). It found this exception to be permitted by the comments to the Restatement itself. *See Owens III*, 194 A.3d at 42 (citing Restatement (Second) of Torts § 46 (1968) Caveat & cmt. i). Thus, *Owens III* confirms that the same general principles of tort law that govern the claims brought by the directly-injured Smith Plaintiffs within one of 1605A's enumerated categories also govern claims brought by the immediate family member Smith Plaintiffs who pursue their claims via District of Columbia law.

Applying these principles to the family member Smith Plaintiffs, the Court finds entry of default concerning liability appropriate with respect to their IIED claims for the same reasons identified previously with respect to the directly-injured Smith Plaintiffs. Here, it is again abundantly clear from the facts available to the Court that Iran's role in the 1983 and 1984 bombings was "intended to cause the highest degree of emotional distress[:]" "terror," *Heiser II*, 659 F. Supp. 2d at 26, and the Special Master's findings of fact again detail how one or both

attacks created immediate and ongoing pain and suffering for the family member Smith Plaintiffs. *See generally* Special Master's R. & R. Thus, based on the undisputed record before it, the Court finds that these materials "establish . . . [the family member Smith Plaintiffs'] claim or right to relief by evidence satisfactory to the court," 28 U.S.C. § 1608(e), and concludes that the family member Smith Plaintiffs have established liability for their IIED claims.[42]

## D. Damages

Having entered default liability, the remaining issue facing the Court is the proper measure of damages to award. "The FSIA's private cause of action permits plaintiffs to seek 'economic damages, solatium, pain and suffering, and punitive damages.'" *Barry I*, 410 F. Supp. 3d at 179 (quoting 28 U.S.C. § 1605A(c)).[43] Here, all of the Smith Plaintiffs seek compensatory damages for "severe emotional distress" under an IIED cause of action, *see* Intervenor Compl. ¶¶ 496–501, and the personal representatives of the individuals who were fatally wounded in one of the attacks also seek economic damages under a wrongful death cause of action, *id.* ¶¶ 502–06.[44]

---

[42] There are three exceptions, discussed previously: John Brother6 NNNSmith, the deceased claimant for whom no legal representative has been identified, and Jane Sister2 ZSmith as well as Jane Sister1 KKSmith, both of whom have voluntarily dismissed their claims.

[43] The FSIA requires plaintiffs to make an adequate evidentiary showing before a court may award damages: "To obtain damages against defendants in a FSIA action, the plaintiff must prove that the consequences of the defendants' conduct were 'reasonably certain (i.e., more likely than not) to occur, and must prove the amount of the damages by a reasonable estimate consistent with this [Circuit's] application of the American rule on damages.'" *Salazar v. Islamic Republic of Iran,* 370 F. Supp. 2d 105, 115–16 (D.D.C. 2005) (internal quotations omitted) (quoting *Hill,* 328 F.3d at 681); *see also Wultz,* 864 F. Supp. 2d at 37. For the reasons discussed previously, the Smith Plaintiffs have established that Iran's provision of material support and resources for an act of extrajudicial killing was intended to injure individuals at the Annex. Thus, they have discharged their burden of proof to show that the consequences of Iran's act were reasonably certain, and the sole question for this Court is the damages amount.

[44] Again, the Smith Plaintiffs also move under two other theories: count I directly invokes § 1605A(c)'s private right of action, Intervenor Compl. ¶¶ 489–95, and count IV seeks relief under a solatium/loss of consortium theory of relief, *id.* ¶¶ 507–11. Because these theories overlap with the IIED and wrongful death claims, and because, "[w]here there has been only one injury, the law confers only one recovery, irrespective of the multiplicity of ... theories which the

In addition, the Smith Plaintiffs seek an award of prejudgment interest on all damages. *Id.* at

137. Special Master Griffin has appraised the material submitted by all of the Smith Plaintiffs,

including signed, sworn affidavits, publicly available information, and an expert report regarding

economic damages. *See* Supplement to Special Master's Report and Recommendation in

Response to October 21, 2019 Order ("Special Master's Supplement") 2–6, ECF No. 52. Using

this information to "independently and holistically evaluate each claim for damages based on

the" contemporary statutory framework and associated body of caselaw, *id.* at 23, Special Master

Griffin has recommended damages awards for each of the Smith Plaintiffs' claims for relief, *see*

*generally* Special Master's R. & R., Appendix C ("Suggested Award Amounts"), ECF No. 39-3.

The Smith Plaintiffs have moved the Court pursuant to Federal Rule of Civil Procedure 53(f) to

adopt these recommendations, as supplemented.[45] *See* ECF No. 53. For the forthcoming

reasons, the Court adopts many, but not all, of the recommendations, and enters judgment

concerning damages with the adjusted amounts discussed in line and enumerated in the attached

appendix.

---

plaintiff pursues," *Kassman*, 546 F.2d at 1034, the Court considers only the IIED and wrongful
death theories of relief in its assessment of damages.

[45] Federal Rule of Civil Procedure 53(f) requires the Court to provide the parties with
notice and the opportunity to be heard before acting on a special master's report and states that a
party may file objections "no later than 21 days after a copy is served." Fed. R. Civ. P. 53(f)(1),
(2). Here, the Smith Plaintiffs did not object and have in fact moved this Court to adopt the
Special Master's report, and Defendant Iran has continued to decline to participate since Special
Master Griffin filed his initial report in August 2019. Thus, this requirement is satisfied.
Pursuant to Rule 53(f), the Court has "authority to "adopt or affirm, modify, wholly or partly
reject or reverse, or resubmit to the master with instructions" and must "decide de novo all
objections to conclusions of law made or recommended by a master." Fed. R. Civ. P. 53(f). The
Court applies this standard in the following analysis.

1.  Compensatory Damages[46]

*a.  Legal Standard for Compensatory Damages under the FSIA*

As other courts addressing similar suits under the FSIA have observed, "it is undeniably difficult to assess the amount of compensatory damages for the pain and suffering of surviving victims of terrorist attacks, especially where severe mental anguish is involved." *Valencia v. Islamic Republic of Iran*, 774 F. Supp. 2d 1, 14 (D.D.C. 2010) (internal quotation marks and citation omitted) (quoting *Brewer*, 664 F.Supp.2d at 57). Because of the importance of ensuring "that individuals with similar injuries receive similar awards," *Peterson,* 515 F. Supp. 2d at 54, courts in this jurisdiction confronting FSIA claims have developed a framework for the calculation of compensatory damages, *see Valore*, 700 F. Supp. 2d at 84. Although the so-called *Heiser* framework, first set forth in *Heiser I*, 466 F. Supp. 2d 229, is non-binding, it provides baseline figures and a basic methodology by which to ascertain the "appropriate measure of damages" both for directly-injured victims and for "the family members of victims who died" or were injured in a terrorist attack. *Lelchook III,* 2019 WL 4673849, at *4–5 (quoting *Peterson,* 515 F. Supp. 2d at 51, 54) (internal citations omitted)); *see also, e.g*, *Valore*, 700 F. Supp. 2d at 85–86 (noting "strong precedential support" for framework); *Brewer v. Islamic Republic of Iran*, 664 F. Supp. 2d 43, 57–58 (D.D.C. 2009); *Heiser II*, 659 F. Supp. 2d at 27 n.4. "Decisions to

---

[46] Again, "courts in this Circuit" addressing claims under the FSIA "have found IIED and solatium claims to be 'indistinguishable.'" *Lelchook III,* 2019 WL 4673849, at *4 (quoting *Heiser II*, 659 F. Supp. 2d at 27 n.4). Technically speaking, the FSIA authorizes the award of solatium damages to redress IIED claims for relief. *See* 28 U.S.C. § 1605A(c)(4) ("[D]amages may include economic damages, solatium, pain and suffering, and punitive damages."). The Court's analysis of IIED damages thus takes into account "prior decisions awarding damages for intentional infliction of emotional distress as well as decisions regarding solatium." *Valore*, 700 F. Supp. 2d at 85 (citing *Acosta*, 574 F. Supp. 2d at 29); *see also Haim v. Islamic Republic of Iran*, 425 F. Supp. 2d 56, 71 (D.D.C. 2006).

deviate from the starting points provided by the *Heiser* framework are committed to the discretion of the particular court in each case." *Oveissi II*, 768 F. Supp. 2d at 26.

Under the *Heiser* framework, a court begins with baseline amounts and may adjust upward or downward to account for individual circumstances. For a directly-injured claimant, "[c]ourts generally 'begin[] with the baseline assumption that persons suffering substantial injuries in terrorist attacks are entitled to $5 million in compensatory damages.'" *Barry I*, 410 F. Supp. 3d at 180 (quoting *Wultz*, 864 F. Supp. 2d at 37–38). An upward adjustment to the $7 to $12 million range may be appropriate "in more severe instances of physical and psychological pain, such as where victims suffered relatively more numerous and severe injuries, were rendered quadriplegic, partially lost vision and hearing, or were mistaken for dead." *Valore,* 700 F. Supp. 2d at 84. Conversely, a downward departure to the $1.5 million to $3 million range may be appropriate "where victims suffered relatively more minor injuries, such as 'minor shrapnel injuries,' or 'severe emotional injury accompanied by relatively minor physical injuries.'" *Barry I*, 410 F. Supp. 3d at 180 (first quoting *Valore*, 700 F. Supp. 2d at 84, then quoting *Estate of Doe v. Islamic Republic of Iran* (*Estate of Doe II*), 943 F. Supp. 2d 180, 186 (D.D.C. 2013)). Such awards for physical injuries "assume severe psychological injuries." *Schertzman Cohen*, 2019 WL 3037868, at *6 (citing *Wamai*, 60 F. Supp. 3d at 92–93).

For family member claimants, the relationship between the victim and the family member who seeks relief determines the baseline amount of the award. *See Peterson*, 515 F. Supp. 2d at 51. As a starting point, the family of a deceased victim typically receives damages in the amount of $8 million for a spouse, $5 million for a child or parent, and $2.5 million for a sibling. *Schooley*, 2019 WL 2717888, at *74. These amounts are halved for the family of an injured

victim, with courts generally awarding $4 million to a spouse, $2.5 million to a child or parent, and $1.25 million to a sibling. *Id.*

In either situation, an upward adjustment may be appropriate "in cases 'with aggravating circumstances,' indicated by such things as '[t]estimony which describes a general feeling of permanent loss or change caused by decedent's absence' or '[m]edical treatment for depression and related affective disorders.'" *Valore*, 700 F. Supp. 2d at 85–86 (first quoting *Greenbaum*, 451 F. Supp. 2d at 108, then quoting *Flatow*, 999 F. Supp. at 31). Whether such an adjustment is in order is a fact-specific inquiry that "cannot be defined through models and variables." *Fraenkel v. Islamic Republic of Iran, Ministry of Foreign Affairs, et al.*, 892 F.3d 348, 356–57 (D.C. Cir. 2018) (quoting *Flatow*, 999 F. Supp. at 29–30). For instance, for a claim made by the family member of a decedent victim, a court may take into account, *inter alia*, "[h]ow the claimant learned of [the] decedent's death, and whether there was an opportunity to say good-bye or view the body;" "[t]he nature of the relationship between the claimant and the decedent," particularly if it was "strong and close;" and the "decedent's position in the family birth order relative to the claimant." *Id.* (quoting *Flatow*, 999 F. Supp. at 31–32). In parsing the relevant facts, a district court is to bear in mind that "past solatium awards from comparable cases are appropriate sources of guidance," but "different plaintiffs (even under FSIA) will prove different facts that may well (and should) result in different damage awards." *Id.* at 362; *see also Schooley*, 2019 WL 2717888, at *77 (citing *Fraenkel*, 892 F.3d at 362).

### b. The Special Master's Damages Analysis

The Special Master's supplementary filing makes clear that he engaged in the analysis contemplated by the *Heiser* framework. Specifically, Special Master Griffin states that he began with the guideline figures set forth above with respect to all of the Smith Plaintiffs. *See* Special

Master's Supplement 7–8.  He has, moreover, now clarified that each upward departure is based on "factors identified by courts in this district[,] . . . including: (1) an especially close relationship between the plaintiff and decedent; (2) proof of severe pain, grief, or suffering; and (3) circumstances surrounding the terrorist attack which made the suffering particularly more acute or agonizing." *Id.* at 9 (internal citations omitted).  And for each of the forty recommended upward departures, Special Master Griffin has augmented his original report with a description of the factual basis underlying the proposed increase.[47] *Id.* at 9–18.  In addition, Special Master Griffin has now clarified that each Smith Plaintiff who received a lower proposed award amount suffered exclusively emotional injuries, and that, for such individuals, he recommended an award of $3 million to each victim, $2.5 million to each spouse, $1.5 million to each parent, and $1 million to each sibling, with no recommended individualized departures indicated. *Id.* at 19.  Having reviewed these materials, the Court adopts the Special Master's findings of fact with respect to these claimants.[48]

---

[47] The Special Master's findings of fact rely on signed, sworn affidavits that provide information about each of the victims.  Special Master's Supplement 2.  Although Special Master Griffin did not "review[] any medical records regarding each victim's injuries or otherwise independently verified any specific medical diagnosis," he based his recommendations for upward departures on "the uncontroverted sworn testimony" and "publicly available information, including medical articles and literature, discussing the possible causal link between severe trauma such as the victims' experience in and as a result of the Beirut Embassy Attacks and the referenced medical conditions." *Id.* at 2–3.  His proposed damages are based on a "holistic review of each victim's (and the victim's family members') testimony regarding" the impact of the attacks. *Id.* at 3.

[48] Whether the evidence provided is adequate to support a plaintiff's claim for relief is left to the Court's discretion. *Han Kim*, 774 F.3d at 1047–48 ("[The] FSIA leaves it to the court to determine precisely how much and what kinds of evidence [] plaintiff[s] must provide, requiring only that it be 'satisfactory to the court.'" (quoting 28 U.S.C. § 1608(e))).  In this case, the Court is mindful that Congress intended, in providing a private right of action under section 1605A of the FSIA, to "compensate[] the victims of terrorism [and thereby] punish foreign states who have committed or sponsored such acts and deter them from doing so in the future." *Id.* at 1048 (quoting *Price*, 294 F.3d at 88–89).  An overly stringent evidentiary standard would not support this objective, particularly where, as here, the events at issue occurred nearly thirty years

But the Court declines to adopt all of the Special Master's specific award amounts. Because Special Master Griffin's supplementary discussion confirms that each proposed upward departure reflects one or more of the factors that warrant such increases, the Court does agree that an upward departure in the proposed amount is appropriate for the specified individuals and, unless specifically identified in the forthcoming discussion, grants the Smith Plaintiffs' motion to adopt his proposed compensatory damages recommendations. However, for the following reasons, the Court declines to accept his recommended compensatory damages awards for (1) the two Smith Plaintiffs who had the misfortune of being associated with more than one directly-injured individual in a given year or (2) the family member Smith Plaintiffs who suffered exclusively emotional injuries.[49]

### c. Award Adjustments

As the Court just indicated, there are two points at which the Court departs from the Special Master's compensatory damages recommendations. The first area concerns the

---

ago. *See Fraenkel*, 892 F.3d at 353 ("[T]he quantum and quality of evidence that might satisfy a court [and allow a plaintiff to obtain default judgment in an action under the FSIA] can be less than that normally required."). This Circuit has directed district courts to exercise the "broad discretion" available to them "to determine what degree and kind of evidence is satisfactory," *Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1114 (D.C. Cir. 2019) (citing *Han Kim*, 774 F.3d at 1047; *Owens*, 864 F.3d at 785), "[s]o [that] the burden imposed on district courts is moderated," *id.* Thus, the Court is satisfied by the forms of evidence upon which the Special Master has relied and adopts his findings of fact. *Accord Roth*, 78 F. Supp. 3d at 386 (stating that a court resolving a suit brought under the FSIA may "rely on uncontroverted factual allegations that are supported by affidavits); *Rimkus*, 750 F. Supp. 2d at 171.

[49] The Court makes one other adjustment for family member claimant Jane Daughter EEESmith. *See* Intervenor Compl. ¶ 342; Special Master's R. & R. 843–44. Although the recommended award amount is $5 million, *see* Special Master's R. & R., Suggested Award Amounts 12, the *Heiser* framework baseline amount for an individual in Jane Daughter EEESmith's position (child of a directly-injured victim) is $2.5 million. Because Jane Daughter EEESmith is not among the claimants identified in the Special Master's Supplement as an individual who received an upward departure based on a holistic review of the victim and family member affidavits, and because the original report itself does not identify her as such, the Court adjusts her award to the baseline figure of $2.5 million.

immediate family member Smith Plaintiffs who suffered the misfortune of having more than one

family member injured in a single attack.[50]  For the two Smith Plaintiffs who fall in this

category, the Special Master has recommended an independent solatium award in association

with each of the directly-injured family members.  *See* Damages Recommendations 14.  The

Court declines to adopt this approach.  Like other courts faced with similar facts, "[t]his Court is

concerned that combining multiple solatium awards would cause family members of attack

victims to recover larger solatium awards than most direct terrorist attack victims recover in pain

and suffering damages."  *Wultz*, 864 F. Supp. 2d at 39; *see also Bland,* 831 F. Supp. 2d at 157–

58; *O'Brien,* 853 F. Supp. 2d at 47–48) ("[I]t is inappropriate for the solatium awards of family

members to exceed the pain and suffering awards of the surviving servicemen.").  That outcome

---

[50] This category is distinct from individuals who raise claims pursuant to both the 1983 and 1984 attacks.  For instance, Jane Wife OSmith Sister4 NNNSmith falls in this category because she seeks relief for injuries to both her husband and her sibling in the 1983 attack.  *See* Recommended Damages Awards 14; Intervenor Compl. ¶¶ 102, 424.  In contrast, Jane Victim KSmith Daughter LSmith does not fall into this category because she seeks relief for injuries that her father suffered in the 1983 attack and that she herself suffered in the 1984 attack.  *See* Recommended Damages Awards 3; Intervenor Compl. ¶¶ 83, 92.  Along similar lines, a Smith Plaintiff such as Jane Victim Smith, who was injured in the 1983 attack and then killed in the 1984 attack, does not fall into this category.  *See* Recommended Damages Awards 1, Intervenor Compl. ¶ 4.  Also falling outside of this category are individuals such as Jane Victim BBBSmith, who previously sought relief as the wife of an embassy employee killed in the 1983 attack, Special Master R. & R. 799 n.30, and now seeks compensatory damages for her own injury in the 1984 attack, *see* Intervenor Compl. ¶ 324.

The Special Master's filings make clear, moreover, that all of the immediate family member claims by Smith Plaintiffs that are based upon the claims of a directly-injured party in a prior legal proceeding do not fall into this category.  Specifically, the material before the Court establishes that all such claims are either (1) solatium claims, based on an IIED theory of relief, brought by an immediate family member, when the previous suit involved a claim by the estate of a directly-injured individual in that family, *see* Special Master's R. & R. 842 n.31 (discussing family members related to deceased individual whose estate brought claims in *Estate of Doe*); Special Master's Supplement 20 (discussing economic damages awarded to estate of Nancy Faraci and James Lewis, respectively, in *Dammarell*), or (2) claims for compensatory damages brought by immediate family members who did not receive relief in the prior suit, Special Master's Supplement 21–23 (describing proposed compensatory damages for immediate family members of directly-injured individuals who sought relief for pain and suffering in *Dammarell*).

would occur here if, for instance, the Court were to award Jane OSmith Sister4 NNNSmith both the recommended $4 million figure for the injury to her husband in the 1983 attack and the recommended $1.25 million figure for the injury to her sibling in the same attack, while awarding $5 million to each of the directly-injured individuals. *See* Recommended Damages 4, 14.

To avoid this result, the Court finds the *Wultz* court's approach compelling. For these two cases, the Court "establish[es] the family member's baseline at the higher of the figures [recommended for either of the injuries] and then consider[s] whether to grant an upward departure from that higher baseline." *Wultz*, 864 F. Supp. 2d at 40; *cf. Schertzman Cohen*, 2019 WL 3037868, at *9 ("Where multiple family members are all injured in the same attack, the Court finds it more prudent to calculate one global award for each Plaintiff, rather than to distinguish emotional suffering caused to an individual by the attack from emotional suffering caused by having family present in the same attack."). Thus, for Jane Wife OSmith Sister4 NNNSmith, the Court begins with the higher recommended figure of $4 million for the direct injury to her husband in the 1983 attack. Because no upward departure is otherwise indicated, the Court will award $4.5 million to her. For the same reasons, the Court also adjusts the total award amount for the estate of Jane Wife OOOSmith Mother PPPSmith to $4.5 million.

The Court next considers the second area in which it departs from the Special Master's analysis: the award amounts for the directly-injured victims who suffered only emotional injuries and for the family members associated with such individuals. In his supplementary filing, the Special Master states that he applied a different framework to such claims and, for claimants in this position, he "recommended a damages framework awarding $3 million to each victim, $2.5

million for each spouse, $1.5 million for each parent, and $1.5 million for each sibling."[51] Special Master's Supplement 19. He further states that he did not make any "recommended individualized departures" for this category of individuals. *Id.*

Here, the Court finds some of the Special Master's analysis compelling, yet parts ways once more with respect to the proposed damages amounts. In general, the Court concurs with his read of the prevailing practice in this circuit, wherein courts have generally adopted a lower starting figure for claims associated with victims who suffered only emotional injuries and/or only very minor physical injuries.[52] *See id.* (citing *Valencia*, 774 F. Supp. 2d at 16–17; *Braun*, 228 F. Supp. 3d at 84). But the Court does not agree with the Special Master's conclusion that $3 million is the appropriate baseline figure for each victim in this position. Rather, other courts have found awards in the $1.5 million to $2.5 million range to be a more appropriate baseline award for claimants who suffered only an emotional injury. *See, e.g.*, *Wamai*, 60 F. Supp. 3d at 92 (granting $1.5 million damages awards to directly-injured plaintiffs who "suffered little physical injury—or none at all—but have claims based on severe emotional injuries"); *Kaplan v. Hezbollah*, 213 F. Supp. 3d 27, 36 (D.D.C. 2016) ("For victims who "suffer[ed] severe emotional injury without physical injury, this Court has typically awarded the victim $1.5 million." (alterations in original) (quoting *Harrison v. Republic of Sudan,* 882 F.Supp.2d 23, 49

---

[51] Although the Special Master does not mention how he addressed the claims of children under this adjusted framework, the Court assumes that—following the general *Heiser* framework—he applied the same baseline figure to the parents and the children of a directly-injured victim.

[52] That said, although Special Master Griffin resists the characterization of these awards as "individualized 'downward departures'" based on the affidavit testimony for each victim, Special Master's Supplement 19, courts applying the *Heiser* framework to the claims of victims in this category have routinely described lower award amounts in these terms. *See, e.g.*, *Braun*, 228 F. Supp. 3d at 84 (citing *Khaliq v. Republic of Sudan*, 33 F. Supp. 3d 29, 33 (D.D.C. 2014) (concluding that "relatively minor" physical injuries "warrant[ed] a downward departure"); *Valore*, 700 F. Supp. 2d at 84 (finding "downward departure . . . [to be] warranted for directly-injured claimant whose "injuries were . . . primarily emotional").

(D.D.C. 2012))); *Valore*, 700 F. Supp. 2d at 84–85 (counseling downward departures to the $1.5 million to $3 million range for directly-injured plaintiffs with minor physical and/or exclusively emotional damages).

The Special Master's reliance on other cases to establish a higher baseline is misplaced. Although the *Valencia* court did award $3 million to a victim who suffered "no physical injury in the attack," the court awarded this amount only in light of "substantial evidence" of "severe psychological trauma," 774 F. Supp. 2d at 17, and not as a baseline amount. The *Braun* court's analysis is also easily distinguishable; there, the court found that the mother of a directly-injured victim "suffered psychological injuries but no physical injuries and, consequently, might presumptively be entitled to an award of only $1,500,000," but concluded that the substantial horror she suffered in proximity to her infant's death warranted an upward departure to $2.5 million. 228 F. Supp. 3d at 84. Here, the Special Master states that "there were no recommended individualized departures" for claimants in this category, Special Master's Supplement 19, and, in any event, such upward departures should not determine the baseline framework. Thus, mindful of the importance of authorizing consistent awards in different FSIA cases that present similar facts, the Court finds $2 million to be the more appropriate baseline figure for directly-injured Smith Plaintiffs who suffered exclusively emotional injuries.

With this $2 million baseline for all of the identified directly-injured Smith Plaintiffs with exclusively emotional injuries,[53] the Court scales the associated family member awards'

---

[53] There is one exception, based on the Court's review of the Special Master's findings of fact: directly-injured claimant John Victim HHHSmith. *See* Intervenor Compl. ¶ 367; Special Master's R. & R. 886–88. On the facts presented, because this individual suffered permanent hearing loss and also developed a stomach condition and diabetes after the 1983 attack, the Court finds the proposed downward departure to $3 million to be out of line with the awards granted to other similarly-affected claimants. The Court is perplexed by this lower award amount, which is not explained at any point—particularly because it is in direct conflict with the Special Master's

proportionately. *See Schertzman Cohen*, 2019 WL 3037868, at *8 ("The Court follows other district courts' prudent approach of scaling solatium awards in proportion to direct-injury awards."). Accordingly, the Court adopts the following damages framework for such claims: $1.5 million for each spouse, $1 million for each parent or child, and $500,000 for each sibling. Where the Special Master's recommendations deviate from this adjusted framework, the award amounts should be altered to conform with the figures provided under it. Because the Court agrees with the Special Master's recommendation that no upward departures are warranted for this category of Smith Plaintiffs, no further adjustment after application of this framework is necessary.

## 2. Economic Damages

The Court now considers the wrongful death claims brought on behalf of the Smith Plaintiffs who were fatally wounded in one of the attacks, and on behalf of whom the legal representative of each estate seeks to recover for economic loss.[54] *See* Intervenor Compl. ¶¶

---

own supplementary materials. *See* Special Master's Supplement 5–6 ("[D]ozens of publicly available medical articles and other literature exist addressing the link between trauma and acute stress . . . and medical conditions including," *inter alia*, diabetes and stomach problems."); *id.* at Ex. 1, ECF No. 52-1 (attaching supporting medical literature documenting link between acute stress and diabetes); *id.* at Ex. 8, ECF No. 52-8 (attaching medical literature documenting link between trauma and stomach conditions). Thus, the Court adjusts John Victim HHHSmith's award amount to the baseline *Heiser* framework figure of $5 million and alters the awards of the immediately-affected family members for this year to reflect this same framework. The Court agrees with the Special Master's assessment that this individual suffered exclusively emotional injuries in the 1984 attack and thus applies the adjusted lower baseline figure to John Victim HHHSmith and his family for their injuries in association with the 1984 attack.

[54] The nine Smith Plaintiffs who pursue this theory of relief are John Victim ASmith, *see* Intervenor Compl. ¶ 8, John Victim BSmith, *see id.* ¶ 19 , John Victim CSmith, *see id.* ¶ 24, John Victim DSmith, *see id.* ¶ 33, John Victim ESmith, *see id.* ¶ 39, John Victim FSmith, *see id.* ¶ 50, John Victim GSmith, *see id.* ¶ 63, John Victim HSmith, *see id.* ¶ 68, and Jane Victim Smith, *see id.* ¶ 4. Because, as discussed previously, the Smith Plaintiffs have already established Defendant's liability for the tort of wrongful death, and because these nine individuals were government employees or contractors at the time of the attack and thus fall within 1605A(c)'s enumerated categories, the Court looks exclusively to section 1605A(c) in its damages analysis.

502–06.  The FSIA authorizes "[a] wrongful-death action" to be "brought through the estate of the decedent[] 'for economic losses which result from a decedent's premature death.'"  *Valore*, 700 F. Supp. 2d at 78 (quoting *Flatow*, 999 F. Supp. at 27); *see also Murphy*, 740 F. Supp. 2d at 74.  To provide support for such a claim for relief, "the report of a forensic economist may provide a reasonable basis for determining the amount of economic damages."  *Reed*, 845 F. Supp. 2d at 214; *see also Belkin*, 667 F. Supp. 2d at 24 (relying on forensic economist's report in calculation of economic damages).  A court that relies upon such an expert report is to assess the "reasonableness and foundation of the assumptions relied upon by the expert."  *Roth*, 78 F. Supp. 3d at 402 (citing *Reed*, 845 F. Supp. 2d at 214).

Here, the Special Master's supplementary filing states that he relied on such an expert report to make economic damages recommendations.  *See* Special Master's Supplement 6.  More specifically, Special Master Griffin assessed a report provided by Steven A. Wolf, a CPA who assessed "the present value dollar amount of each individual's past and future income loss directly attributable to his or her premature death . . . as compared to his or her planned or anticipated employment opportunities if the plaintiff would have lived a typical life in Lebanon."  *Id.*  Mr. Wolf is the same expert who assessed economic damages in not only *Dammarell I*, 281 F. Supp. 2d at 120, and *Estate of Doe II*, 943 F. Supp. 2d at 185*, see also* Special Master's R. & R. 1174 (describing Mr. Wolf's involvement in *Dammarell* and *Estate of Doe*), but also in other FSIA cases such as *Owens v. Republic of Sudan* (*Owens I*), 71 F. Supp. 3d 252, 258 (D.D.C. 2014), *aff'd,* 924 F.3d 1256 (D.C. Cir. 2019), and *aff'd in part, question certified,* 864 F.3d 751 (D.C. Cir. 2017), and *aff'd,* 924 F.3d 1256 (D.C. Cir. 2019), and *Reed*, 845 F. Supp. 2d at 214.

The Special Master's original report also provides more detail concerning the expert report on which he relied.  Mr. Wolf's "projected income loss calculations" are based on his

"review of historical earnings . . ., economic statistics, testimonial evidence presented by victims' families, and the career stage of each deceased victim at the time of his or her death." Special Master's R. & R. 1173. His projections reflect "conservative financial assumptions" such as a fixed employment status and income level over an individual's lifetime and employment until age sixty (for security workers) and age sixty-four (for all other victims). *Id.* at 1174. Moreover, the specific methodology employed to "calculate the present value of each individual's lost income" is "identical" to the one that Mr. Wolf used in *Dammarell* and *Estate of Doe*. *Id.* Special Master Griffin indicates that the expert report itself is "similar" to reports "previously approved by courts in this district in other FSIA cases including cases involving the same attacks and colleagues of the Smith Plaintiffs." Special Master's Supplement 6 (citing *Estate of Doe*, 943 F. Supp. 2d at 185–86; *Dammarell I*, 281 F. Supp. 2d at 120). Based on the uncontroverted record before it, the Court accepts Special Master Griffin's conclusions concerning the report, the methodology adopted therein, and his associated recommendations and, accordingly, adopts the proposed economic damages awards in full.

### 3. Prejudgment Interest

One final matter remains: the Smith Plaintiffs' request for prejudgment interest on all awards. Whether to award such interest "is subject to the discretion of the court and equitable considerations." *Oldham v. Korean Air Lines Co.*, 127 F.3d 43, 54 (D.C. Cir. 1997) (citation omitted). Because "[p]rejudgment interest is an element of complete compensation," *W. Virginia v. United States*, 479 U.S. 305, 310 (1987) (citing *General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 655 & n.10 (1983)), it should be denied "[w]hen an award without prejudgment interest fully compensates a plaintiff." *Wyatt v. Syrian Arab Republic*, 908 F. Supp.

2d 216, 232 (D.D.C. 2012), *aff'd*, 554 F. App'x 16 (D.C. Cir. 2014) (quoting *Price*, 384 F. Supp. 2d at 135 (D.D.C. 2005)).

Courts in this Circuit have split on whether an award of prejudgment interest on compensatory damages is appropriate in FSIA suits. Where courts have made such an award, they have generally justified it based on a delay between the time of the attack giving rise to the injury and the time at which the claimants received relief. *See, e.g.*, *Reed*, 845 F. Supp. 2d at 214 (citing *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F. Supp. 2d 216, 263–65 (D.D.C. 2008)); *Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011). But other courts have rejected this rationale, holding instead that the "values set by" the *Heiser* framework "represent the appropriate level of compensation, regardless of the timing of the attack." *Oveissi II*, 768 F. Supp. 2d at 30 n.12. These courts emphasize that "pain and suffering and solatium damages are both designed to be fully compensatory." *Wyatt*, 908 F. Supp. 2d 216, 232 (D.D.C. 2012); *see also, e.g.*, *Schertzman Cohen*, 2019 WL 3037868, at *10 (citing *Wultz*, 864 F. Supp. 2d at 43; *Thuneibat*, 167 F. Supp. 3d 22, 54; *Akins*, 332 F. Supp. 3d at 45–46). There is no directly controlling precedent on this question. For the following reasons, based on its own analysis of fundamental principles of tort law, this Court declines to grant prejudgment interest on any of the Smith Plaintiffs' claims.

In this case, the Court finds all of its damages awards to be fully compensatory. As the Court has previously noted, the Smith Plaintiffs' claims in this suit sound in two causes of action: wrongful death for the directly-injured victims killed in an attack, for which the claimants seek economic damages, and IIED for the directly-injured surviving victims as well as the family member victims, for which the claimants seek compensatory damages.[55]

---

[55] As discussed previously, the Court follows the lead of other courts in this Circuit that

The first issue is the simpler one.  Where, as here, an economic damages award has already been adjusted to reflect present-day dollar amounts, a separate award of prejudgment interest would be "duplicative."  *Thuneibat*, 167 F. Supp. 3d at 54.  Thus, the Court declines to award prejudgment interest for economic damages.

Turning now to the IIED claim for relief, the Court's award of compensatory damages is granted pursuant to the FSIA's private cause of action, which authorizes, *inter alia*, "solatium[] [and] pain and suffering" damages.  28 U.S.C. § 1605A(c).  This award attempts to provide a remedy for injuries that that are emotional and psychological in nature.  *See Frankel*, 892 F.3d at 356–57 ("[M]ental anguish, bereavement and grief resulting from the fact of decedent's death constitutes the preponderant element of a claim for solatium." (quoting *Flatow*, 99 F. Supp. at 30)).  Rather than administer such an award ad hoc, the Court looks to the plain text of "well-established statements of common law," such as the Restatement of Torts, "in determining damages under § 1605A(c)."  *Fraenkel*, 892 F.3d at 353 (citing *Bettis*, 315 F.3d at 333).  The Restatement of Torts's entry on interest provides the most directly relevant guidance here.  This entry, § 913, positions the Smith Plaintiffs' underlying harm in direct contrast to an injury such as "the taking or detention of land, chattels," or of other property, which can be assessed in terms of the pecuniary injury to the claimant.  Restatement (Second) of Torts § 913(1) (1979).  Drawing on this clear distinction between harms to property and emotional injuries, the Restatement indicates that "[i]nterest is not allowed upon an amount found due . . . for emotional

---

"have found IIED and solatium claims to be 'indistinguishable,'" *Lelchook III*, 2019 WL 4673849, at *4 (quoting *Heiser II*, 659 F. Supp. 2d at 27 n.4).  Moreover, as the Court next addresses, the FSIA authorizes both solatium and pain and suffering damages.  Thus, although the compensatory damages award for IIED to the directly-injured plaintiffs are, technically speaking, pain and suffering damages, whereas the compensatory damages award for IIED to the family member plaintiffs are solatium damages, the following discussion at times uses the term "compensatory damages" as shorthand for both categories.

distress." *Id*. § 913(2).  As set forth in more detail in the comments to this portion of the

Restatement:

> [T]here is no equivalence between money and harm to the person, to the feelings or to reputation except so far as the harm causes pecuniary loss. The damages given for these harms are usually not referable solely to the hurt sustained at some definite prior time, but embrace all the harm that has been inflicted up to the time of trial as well as, in many cases, that which will be suffered in the future.  Because of this and because the amount of damages that may be awarded can not be estimated in advance with any degree of accuracy, interest on the amount found as compensation is not given. . . . Moreover, even in the case in which there has been no financial loss, the length of time elapsing before compensation is made is not an improper element to consider in the awarding of damages.  It is, however, improper, having found the amount that should be awarded as compensation, to add to it a specific amount of interest.

*Id*. § 913, cmt. c.

In this case, it is evident that the Smith Plaintiffs' injuries fall within the category of

harms that, like other claims of emotional distress, are uncertain and ongoing.  *Accord Flatow*,

999 F. Supp. at 32 ("[S]olatium cannot be defined through models and variables. . . . While

economic losses can be reduced to present value with simple equations . . ., the scope and

uncertainty of human emotion renders such a calculation wholly inappropriate." (citing *Drews v.*

*Gobel Freight Lines,* Inc. 144 Ill.2d 84 (1991); *United States v. Hayashi,* 282 F.2d 599 (9th Cir.

1960)).  The fundamental principles of tort law thus cut against the award of interest in this

situation.  Accordingly, the damages award accorded to the Smith Plaintiffs is best construed as

fully compensatory in its own right, and prejudgment interest on the awards of solatium and pain

and suffering are not appropriate.

That said, the Court also takes note of the second portion of the relevant Restatement

provision: the suggestion that "the time that has elapsed between the harm and the trial can be

considered in determining the amount of damages."  Restatement (Second) of Torts § 913(2).  It

is perhaps for this reason that district courts resolving FSIA suits have awarded prejudgment

interest on the basis of a delay between the time of the attack giving rise to an injury and the time of the award. Here, such appeals to a delay are the sole justification presented by the Smith Plaintiffs or by the Special Master. *See* R. & R. 1179–81. But returning once more to the basic principles of tort law enumerated in the Restatement, this approach seems incorrect. If consideration of a delay is to enter into the Court's award of damages, then it should properly do so in the calculation of the damages amount in the first instance. It is not a factor to address retroactively, on top of the damages award. And in this case, neither the Smith Plaintiffs nor the Special Master argue that the *Heiser* framework from which the damages awards are calculated is insufficient; to the contrary, they urge its adoption, subject to particularized upward or downward departures to reflect specific claimants' factual circumstances (as discussed previously). Thus, there is no principled basis from which to draw a through line from arguments about delay to an award of prejudgment interest for compensatory damages. Accordingly, although the Court is troubled by the fact that the *Heiser* framework was first proposed in 2006 and has not been indexed to inflation or updated since that time, in light of the importance of ensuring "that individuals with similar injuries receive similar awards," *Peterson,* 515 F. Supp. 2d at 54, this Court declines to smuggle in what amounts to an update to the *Heiser* framework by abstractly pointing to a delay between the injury and the time of the award. Without a firm grounding in well-established common law principles or a clear directive from this Circuit concerning the relationship between the *Heiser* framework, the duration of time between the injury and the award, and prejudgment interest, the Court declines to award prejudgment interest based only on allegations of delay.[56] *Accord Akins*, 332 F. Supp. 3d at 46

---

[56] In any event, the Court notes that nothing barred the Smith Plaintiffs from filing suit years ago, after the statutory amendment to the FSIA in 2008 opened up the private cause of action. Indeed, similarly-positioned victims filed suit in 2011 in *Estate of Doe I*, 808 F. Supp. 2d

(denying prejudgment interest where plaintiffs "d[id] not suggest that awards under the *Heiser* framework are insufficient" and invoking Restatement (Second) of Torts § 913 in support of determination). The Court therefore does not adopt the Special Master's recommendation concerning prejudgment interest and declines to award this additional measure of damages for any of the Smith Plaintiffs' claims.

Summing up, then, the Court awards over $1.5 billion in compensatory and economic damages to the Smith Plaintiffs, adopting the proposals indicated by the Special Master with the exceptions and adjustments described previously and indicated in the attached appendix. Although no dollar figure can redress what the Smith Plaintiffs have suffered, the Court hopes that this award brings some small measure of resolution to these families.

## V. CONCLUSION

For the foregoing reasons, the Smith Plaintiffs' motion to enter default judgment concerning liability is granted in part; the Smith Plaintiffs' motion to substitute is granted; the Smith Plaintiffs' motion to adopt the Special Master's report and recommendation is granted in part; and the Smith Plaintiffs' motion for a status conference is denied as moot. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: February 4, 2020                                          RUDOLPH CONTRERAS
                                                                 United States District Judge

---

at 6 ("This Court is the first to address the claims of foreign national immediate family members of U.S. government employees under the 2008 FSIA amendments."). Although the Smith Plaintiffs state that many claimants were not aware of the ability to pursue relief until a later date, *see, e.g.*, Smith Pls.' Response to Order of the Court 9 & n.7, ECF No. 19, they provide no facts or argumentation to support the proposition that they were outright prevented from doing so until "the D.C. Circuit . . . ruled definitively in *Owens*," *id.* at 9. The upshot: because the Smith Plaintiffs did not move to intervene until August 2017, their own actions contributed to the claimed delay, and the Court does not find delay to be an adequate independent basis for the award of prejudgment interest.

# APPENDIX: DAMAGES AWARDS FOR SMITH PLAINTIFFS

| Plaintiff Name | Compensatory Damages - 1983 | | Economic Damages - 1983 | Compensatory Damages - 1984 | | Economic Damages - 1984 | Total Award |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | Pain & Suffering | Solatium | | Pain & Suffering | Solatium | | |
| Estate of Jane Victim Smith | $5,000,000 | $0 | $0 | $0 | $0 | $1,048,231 | $6,048,231 |
| John Husband Smith | $0 | $4,000,000 | $0 | $0 | $10,000,000 | $0 | $14,000,000 |
| Jane Daughter1 Smith | $0 | $2,500,000 | $0 | $0 | $5,000,000 | $0 | $7,500,000 |
| Jane Daughter2 Smith | $0 | $2,500,000 | $0 | $0 | $6,000,000 | $0 | $8,500,000 |
| Estate of John Victim ASmith | $0 | $0 | $1,182,136 | $0 | $0 | $0 | $1,182,136 |
| Jane Wife ASmith | $0 | $8,000,000 | $0 | $0 | $0 | $0 | $8,000,000 |
| John Son1 ASmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| John Son2 ASmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Jane Daughter1 ASmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Jane Daughter2 ASmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Estate of John Father ASmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| John Brother1 ASmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Brother2 ASmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Brother3 ASmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Sister ASmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Estate of John Victim BSmith | $0 | $0 | $261,903 | $0 | $0 | $0 | $261,903 |
| Estate of Jane Wife BSmith | $0 | $8,000,000 | $0 | $0 | $0 | $0 | $8,000,000 |

| | | | | | | |
|---|---|---|---|---|---|---|
| John Son1 BSmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Estate of John Son2 BSmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Estate of John Son3 BSmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Estate of John Victim CSmith | $0 | $0 | $3,692,215 | $0 | $0 | $0 | $3,692,215 |
| Estate of Jane Wife Csmith | $0 | $8,000,000 | $0 | $0 | $0 | $0 | $8,000,000 |
| John Son CSmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Jane Daughter CSmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Estate of Jane Mother CSmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Estate of John Brother1 CSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Estate of John Brother2 CSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Estate of John Brother3 CSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Sister CSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Estate of John Victim DSmith | $0 | $0 | $1,531,335 | $0 | $0 | $0 | $1,531,335 |
| Jane Wife DSmith | $0 | $8,000,000 | $0 | $0 | $0 | $0 | $8,000,000 |
| John Son1 DSmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| John Son2 DSmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Jane Daughter1 DSmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Jane Daughter2 DSmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Estate of John Victim ESmith | $0 | $0 | $3,111,131 | $0 | $0 | $0 | $3,111,131 |
| Estate of John Father ESmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Estate of Jane Mother | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ESmith | | | | | | | |
| John Brother1 ESmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Brother2 ESmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Brother3 ESmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Sister1 ESmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Sister2 ESmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Estate of Jane Sister3 ESmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Sister4 ESmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Sister5 ESmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Estate of John Victim FSmith | $0 | $0 | $3,069,960 | $0 | $0 | $0 | $3,069,960 |
| Estate of John Father FSmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Jane Mother FSmith (through legal representative John Brother2 FSmith) | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| John Brother1 FSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Brother2 FSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Brother3 FSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Brother4 FSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Estate of John Brother5 FSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Sister1 FSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |

| Name | | | | | | Total |
|---|---|---|---|---|---|---|
| Jane Sister2 FSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Sister3 FSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Sister4 FSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Sister5 FSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Estate of John Victim GSmith | $0 | $0 | $5,031,961 | $0 | $0 | $0 | $5,031,961 |
| Jane Wife GSmith | $0 | $8,000,000 | $0 | $0 | $0 | $0 | $8,000,000 |
| Jane Daughter1 GSmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Jane Daughter2 GSmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Jane Daughter3 GSmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Estate of John Victim HSmith | $0 | $0 | $8,824,575 | $0 | $0 | $0 | $8,824,575 |
| Jane Wife HSmith | $0 | $8,000,000 | $0 | $0 | $0 | $0 | $8,000,000 |
| John Son HSmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Jane Daughter1 HSmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Jane Daughter2 HSmith | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Jane Daughter3 HSmith | $0 | $6,000,000 | $0 | $0 | $0 | $0 | $6,000,000 |
| Estate of John Brother HSmith | $0 | $3,500,000 | $0 | $0 | $0 | $0 | $3,500,000 |
| Estate of John Victim ISmith | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,000,000 |
| Jane Wife ISmith | $0 | $0 | $0 | $0 | $4,000,000 | $0 | $4,000,000 |
| Jane Sister1 ISmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Jane Sister2 ISmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Jane Victim JSmith | $5,000,000 | $0 | $0 | $0 | $0 | $0 | $5,000,000 |
| Estate of John Father JSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Brother JSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| Jane Sister JSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| Jane Victim KSmith Daughter LSmith | $0 | $0 | $0 | $7,000,000 | $0 | $0 | $7,000,000 |
| Estate of John Father KSmith Victim LSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| Estate of Jane Mother KSmith Wife LSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| John Brother1 KSmith Son1 LSmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| John Brother2 KSmith Son2 LSmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| John Father KSmith Victim LSmith | $5,000,000 | $0 | $0 | $0 | $0 | $0 | $5,000,000 |
| Jane Mother KSmith Wife LSmith | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| John Brother1 KSmith Son1 LSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Brother2 KSmith Son2 LSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Victim KSmith Daughter LSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Estate of Jane Mother LSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Estate of John Victim NSmith | $5,000,000 | $0 | $0 | $5,000,000 | $0 | $0 | $10,000,000 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Estate of Jane Mother NSmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| Estate of John Brother1 NSmith | $0 | $1,250,000 | $0 | $0 | $1,250,000 | $0 | $2,500,000 |
| John Brother2 NSmith | $0 | $1,250,000 | $0 | $0 | $1,250,000 | $0 | $2,500,000 |
| Estate of John Brother3 NSmith | $0 | $1,250,000 | $0 | $0 | $1,250,000 | $0 | $2,500,000 |
| Jane Sister1 NSmith | $0 | $1,250,000 | $0 | $0 | $1,250,000 | $0 | $2,500,000 |
| Jane Sister2 NSmith | $0 | $1,250,000 | $0 | $0 | $1,250,000 | $0 | $2,500,000 |
| John Victim OSmith | $5,000,000 | $0 | $0 | $0 | $0 | $0 | $5,000,000 |
| Jane Wife OSmith Sister4 NNNSmith | $0 | $4,500,000 | $0 | $0 | $0 | $0 | $4,500,000 |
| John Son OSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Mother OSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Victim PSmith | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,000,000 |
| Jane Wife PSmith | $0 | $0 | $0 | $0 | $4,000,000 | $0 | $4,000,000 |
| Jane Victim QSmith | $5,000,000 | $0 | $0 | $7,000,000 | $0 | $0 | $12,000,000 |
| Estate of John Father QSmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| Estate of Jane Mother QSmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| Estate of John Brother1 QSmith | $0 | $1,250,000 | $0 | $0 | $1,250,000 | $0 | $2,500,000 |
| John Brother2 QSmith | $0 | $1,250,000 | $0 | $0 | $1,250,000 | $0 | $2,500,000 |
| Estate of Jane Sister1 QSmith | $0 | $1,250,000 | $0 | $0 | $1,250,000 | $0 | $2,500,000 |
| Jane Sister2 QSmith | $0 | $1,250,000 | $0 | $0 | $1,250,000 | $0 | $2,500,000 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Jane Sister3 QSmith | $0 | $1,250,000 | $0 | $0 | $1,250,000 | $0 | $2,500,000 |
| John Victim RSmith | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,000,000 |
| John Wife RSmith | $0 | $0 | $0 | $0 | $4,000,000 | $0 | $4,000,000 |
| John Son1 RSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| John Son2 RSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| John Victim SSmith | $5,000,000 | $0 | $0 | $0 | $0 | $0 | $5,000,000 |
| Estate of John Father SSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Estate of Jane Mother Ssmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Brother1 SSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| John Brother2 SSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| John Brother3 SSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| Jane Sister SSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| Estate of John Victim TSmith | $5,000,000 | $0 | $0 | $2,000,000 | $0 | $0 | $7,000,000 |
| Jane Wife TSmith | $0 | $4,000,000 | $0 | $0 | $1,500,000 | $0 | $5,500,000 |
| John Son TSmith | $0 | $2,500,000 | $0 | $0 | $1,000,000 | $0 | $3,500,000 |
| Jane Daughter TSmith | $0 | $2,500,000 | $0 | $0 | $1,000,000 | $0 | $3,500,000 |
| Estate of John Victim USmith | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,000,000 |
| Jane Wife USmith | $0 | $0 | $0 | $0 | $4,000,000 | $0 | $4,000,000 |
| Jane Sister1 USmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Jane Sister2 USmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| John Victim VSmith | $0 | $0 | $0 | $2,000,000 | $0 | $0 | $2,000,000 |
| Jane Wife VSmith | $0 | $0 | $0 | $0 | $1,500,000 | $0 | $1,500,000 |
| John Son | $0 | $0 | $0 | $0 | $1,000,000 | $0 | $1,000,000 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| VSmith | | | | | | | |
| Jane Mother VSmith | $0 | $0 | $0 | $0 | $1,000,000 | $0 | $1,000,000 |
| Jane Victim WSmith | $2,000,000 | $0 | $0 | $0 | $0 | $0 | $2,000,000 |
| John Victim XSmith | $5,000,000 | $0 | $0 | $7,000,000 | $0 | $0 | $12,000,000 |
| Jane Wife XSmith | $0 | $4,000,000 | $0 | $0 | $4,000,000 | $0 | $8,000,000 |
| Jane Daughter XSmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| Estate of Jane Mother XSmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| John Victim YSmith | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,000,000 |
| Jane Sister YSmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| John Victim ZSmith | $0 | $0 | $0 | $7,000,000 | $0 | $0 | $7,000,000 |
| Jane Wife ZSmith | $0 | $0 | $0 | $0 | $4,000,000 | $0 | $4,000,000 |
| John Son ZSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| Jane Daughter1 ZSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| Jane Daughter2 ZSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| Estate of Jane Mother ZSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| Estate of John Brother1 ZSmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| John Brother2 ZSmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Estate of John Brother3 ZSmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Jane Sister1 ZSmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| John Victim AASmith | $0 | $0 | $0 | $2,000,000 | $0 | $0 | $2,000,000 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Jane Wife AASmith | $0 | $0 | $0 | $0 | $1,500,000 | $0 | $1,500,000 |
| Estate of John Father AASmith | $0 | $0 | $0 | $0 | $1,000,000 | $0 | $1,000,000 |
| Estate of Jane Mother AASmith | $0 | $0 | $0 | $0 | $1,000,000 | $0 | $1,000,000 |
| John Brother1 AASmith | $0 | $0 | $0 | $0 | $500,000 | $0 | $500,000 |
| John Brother2 AASmith | $0 | $0 | $0 | $0 | $500,000 | $0 | $500,000 |
| John Brother3 AASmith | $0 | $0 | $0 | $0 | $500,000 | $0 | $500,000 |
| John Brother4 AASmith | $0 | $0 | $0 | $0 | $500,000 | $0 | $500,000 |
| Jane Sister1 AASmith | $0 | $0 | $0 | $0 | $500,000 | $0 | $500,000 |
| Jane Sister2 AASmith | $0 | $0 | $0 | $0 | $500,000 | $0 | $500,000 |
| Jane Sister3 AASmith | $0 | $0 | $0 | $0 | $500,000 | $0 | $500,000 |
| Estate of Jane Sister4 AASmith | $0 | $0 | $0 | $0 | $500,000 | $0 | $500,000 |
| Estate of John Victim BBSmith | $5,000,000 | $0 | $0 | $0 | $0 | $0 | $5,000,000 |
| Jane Wife BBSmith | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| John Son BBSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Daughter BBSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Victim CCSmith | $5,000,000 | $0 | $0 | $0 | $0 | $0 | $5,000,000 |
| Estate of Jane Wife CCSmith | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| John Son CCSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Victim DDSmith | $5,000,000 | $0 | $0 | $2,000,000 | $0 | $0 | $7,000,000 |
| Estate of Jane Mother DDSmith | $0 | $2,500,000 | $0 | $0 | $1,000,000 | $0 | $3,500,000 |

| Name | | | | | | | |
|---|---|---|---|---|---|---|---|
| John Brother1 DDSmith | $0 | $1,250,000 | $0 | $0 | $500,000 | $0 | $1,750,000 |
| John Brother2 DDSmith | $0 | $1,250,000 | $0 | $0 | $500,000 | $0 | $1,750,000 |
| John Victim EESmith | $5,000,000 | $0 | $0 | $5,000,000 | $0 | $0 | $10,000,000 |
| Jane Wife EESmith | $0 | $4,000,000 | $0 | | $5,000,000 | $0 | $9,000,000 |
| John Son1 EESmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| John Son2 EESmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| Estate of Jane Mother EESmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| John Brother1 EESmith | $0 | $1,250,000 | $0 | $0 | $1,250,000 | $0 | $2,500,000 |
| Estate of John Brother2 EESmith | $0 | $1,250,000 | $0 | $0 | $1,250,000 | $0 | $2,500,000 |
| Jane Sister EESmith | $0 | $1,250,000 | $0 | $0 | $1,250,000 | $0 | $2,500,000 |
| John Victim FFSmith | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,000,000 |
| Estate of John Father FFSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| Jane Mother FFSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| John Brother FFSmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Jane Sister1 FFSmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Jane Sister2 FFSmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Jane Sister3 FFSmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Estate of John Victim GGSmith | $5,000,000 | $0 | $0 | $0 | $0 | $0 | $5,000,000 |
| Estate of Jane Wife GGSmith | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| John Son1 GGSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| John Son2 GGSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Estate of John Son3 GGSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Son4 GGSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Daughter1 GGSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Daughter2 GGSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Daughter3 GGSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Daughter4 GGSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Victim HHSmith | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,000,000 |
| Jane Wife HHSmith | $0 | $0 | $0 | $0 | $4,000,000 | $0 | $4,000,000 |
| John Victim IISmith | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,000,000 |
| Estate of John Father IISmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| Estate of Jane Mother IISmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| John Brother1 IISmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| John Brother2 IISmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Jane Sister1 IISmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Jane Sister2 IISmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Jane Sister3 IISmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Estate of Jane Victim JJSmith | $5,000,000 | $0 | $0 | $0 | $0 | $0 | $5,000,000 |
| Jane Daughter JJSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Estate of Jane Mother JJSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Estate of John Victim KKSmith | $7,000,000 | $0 | $0 | $0 | $0 | $0 | $7,000,000 |
| Estate of Jane Wife KKSmith | $0 | $6,000,000 | $0 | $0 | $0 | $0 | $6,000,000 |
| Estate of John Son1 KKSmith | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| John Son2 KKSmith | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| John Son3 KKSmith | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| John Son4 KKSmith | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| Jane Daughter1 KKSmith | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| Jane Daughter2 KKSmith | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| Jane Daughter3 KKSmith | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| Estate of John Brother KKSmith | $0 | $2,000,000 | $0 | $0 | $0 | $0 | $2,000,000 |
| Jane Sister2 KKSmith | $0 | $2,000,000 | $0 | $0 | $0 | $0 | $2,000,000 |
| Jane Victim LLSmith | $2,000,000 | $0 | $0 | $2,000,000 | $0 | $0 | $4,000,000 |
| Estate of John Father LLSmith | $0 | $1,000,000 | $0 | $0 | $1,000,000 | $0 | $2,000,000 |
| Estate of Jane Mother LLSmith | $0 | $1,000,000 | $0 | $0 | $1,000,000 | $0 | $2,000,000 |
| John Brother1 LLSmith | $0 | $500,000 | $0 | $0 | $500,000 | $0 | $1,000,000 |
| John Brother2 LLSmith | $0 | $500,000 | $0 | $0 | $500,000 | $0 | $1,000,000 |
| Jane Sister1 LLSmith | $0 | $500,000 | $0 | $0 | $500,000 | $0 | $1,000,000 |
| Jane Sister2 LLSmith | $0 | $500,000 | $0 | $0 | $500,000 | $0 | $1,000,000 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| John Victim MMSmith | $5,000,000 | $0 | $0 | $5,000,000 | $0 | $0 | $10,000,000 |
| Jane Wife MMSmith | $0 | $4,000,000 | $0 | $0 | $4,000,000 | $0 | $8,000,000 |
| John Son MMSmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| Jane Daughter MMSmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| Jane Victim NNSmith | $2,000,000 | $0 | $0 | $0 | $0 | $0 | $2,000,000 |
| Estate of John Father NNSmith | $0 | $1,000,000 | $0 | $0 | $0 | $0 | $1,000,000 |
| Estate of Jane Mother NNSmith | $0 | $1,000,000 | $0 | $0 | $0 | $0 | $1,000,000 |
| Estate of John Brother1 NNSmith | $0 | $500,000 | $0 | $0 | $0 | $0 | $500,000 |
| John Brother2 NNSmith | $0 | $500,000 | $0 | $0 | $0 | $0 | $500,000 |
| Estate of John Brother3 NNSmith | $0 | $500,000 | $0 | $0 | $0 | $0 | $500,000 |
| Jane Sister NNSmith | $0 | $500,000 | $0 | $0 | $0 | $0 | $500,000 |
| John Victim OOSmith | $5,000,000 | $0 | $0 | $5,000,000 | $0 | $0 | $10,000,000 |
| Jane Wife OOSmith | $0 | $4,000,000 | $0 | $0 | $4,000,000 | $0 | $8,000,000 |
| John Son1 OOSmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| John Son2 OOSmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| John Son3 OOSmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| Estate of Jane Mother OOSmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| John Brother OOSmith | $0 | $1,250,000 | $0 | $0 | $1,250,000 | $0 | $2,500,000 |
| John Victim PPSmith | $5,000,000 | $0 | $0 | $0 | $0 | $0 | $5,000,000 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Jane Wife PPSmith | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| Estate of Jane Mother PPSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Victim QQSmith | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,000,000 |
| Estate of John Father QQSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| Estate of Jane Mother QQSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| John Brother QQSmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Jane Sister1 QQSmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Jane Sister2 QQSmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| John Victim RRSmith | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,000,000 |
| Jane Mother RRSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| John Brother RRSmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Jane Sister1 RRSmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Jane Sister2 RRSmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Jane Sister3 RRSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| Jane Victim SSSmith | $2,000,000 | $0 | $0 | $0 | $0 | $0 | $2,000,000 |
| John Husband SSSmith | | $1,500,000 | $0 | $0 | $0 | $0 | $1,500,000 |
| John Son SSSmith | $0 | $1,000,000 | $0 | $0 | $0 | $0 | $1,000,000 |
| Jane Daughter1 SSSmith | $0 | $1,000,000 | $0 | $0 | $0 | $0 | $1,000,000 |
| Jane Daughter2 SSSmith | $0 | $1,000,000 | $0 | $0 | $0 | $0 | $1,000,000 |
| Jane Daughter3 SSSmith | $0 | $1,000,000 | $0 | $0 | $0 | $0 | $1,000,000 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Estate of Jane Mother SSSmith | $0 | $1,000,000 | $0 | $0 | $0 | $0 | $1,000,000 |
| Estate of John Victim TTSmith | $5,000,000 | $0 | $0 | $5,000,000 | $0 | $0 | $10,000,000 |
| Jane Wife TTSmith | $0 | $4,000,000 | $0 | $0 | $4,000,000 | $0 | $8,000,000 |
| John Son TTSmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| Jane Victim UUSmith | $5,000,000 | $0 | $0 | $0 | $0 | $0 | $5,000,000 |
| Estate of John Father UUSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Estate of Jane Mother UUSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Brother UUSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| John Victim VVSmith | $2,000,000 | $0 | $0 | $0 | $0 | $0 | $2,000,000 |
| Jane Wife VVSmith | $0 | $1,500,000 | $0 | $0 | $0 | $0 | $1,500,000 |
| John Son1 VVSmith | $0 | $1,000,000 | $0 | $0 | $0 | $0 | $1,000,000 |
| John Son2 VVSmith | $0 | $1,000,000 | $0 | $0 | $0 | $0 | $1,000,000 |
| Jane Daughter VVSmith | $0 | $1,000,000 | $0 | $0 | $0 | $0 | $1,000,000 |
| John Brother VVSmith | $0 | $500,000 | $0 | $0 | $0 | $0 | $500,000 |
| Estate of John Victim WWSmith | $5,000,000 | $0 | $0 | $5,000,000 | $0 | $0 | $10,000,000 |
| Jane Wife WWSmith | $0 | $4,000,000 | $0 | $0 | $4,000,000 | $0 | $8,000,000 |
| John Son1 WWSmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| John Son2 WWSmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| John Victim XXSmith | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,000,000 |
| Jane Wife XXSmith | $0 | $0 | $0 | $0 | $5,000,000 | $0 | $5,000,000 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| John Victim YYSmith | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,000,000 |
| Jane Wife YYSmith | $0 | $0 | $0 | $0 | $4,000,000 | $0 | $4,000,000 |
| John Son1 YYSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| John Son2 YYSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| Jane Daughter1 YYSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| Jane Daughter2 YYSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| Jane Daughter3 YYSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| Jane Daughter4 YYSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| Jane Daughter5 YYSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| Jane Victim ZZSmith | $5,000,000 | $0 | $0 | $0 | $0 | $0 | $5,000,000 |
| John Husband ZZSmith | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| Jane Daughter1 ZZSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Daughter2 ZZSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Brother ZZSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| John Victim AAASmith | $0 | $0 | $0 | $7,000,000 | $0 | $0 | $7,000,000 |
| Jane Wife AAASmith | $0 | $0 | $0 | $0 | $4,000,000 | $0 | $4,000,000 |
| Jane Daughter AAASmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| Estate of John Father AAASmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| Estate of Jane Mother AAASmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |

| | | | | | | |
|---|---|---|---|---|---|---|
| John Brother1 AAASmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| John Brother2 AAASmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| John Brother3 AAASmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| John Brother4 AAASmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| John Brother5 AAASmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| John Brother6 AAASmith | $0 | $0 | $0 | $0 | $2,000,000 | $0 | $2,000,000 |
| Jane Sister1 AAASmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Jane Sister2 AAASmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Jane Sister3 AAASmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Jane Sister4 AAASmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Jane Victim BBBSmith | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,000,000 |
| John Son BBBSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| Estate of John Father BBBSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| Jane Mother BBBSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| John Brother BBBSmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| John Victim CCCSmith | $5,000,000 | $0 | $0 | $5,000,000 | $0 | $0 | $10,000,000 |
| Estate of Jane Mother CCCSmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| John Brother1 CCCSmith | $0 | $1,250,000 | $0 | $0 | $1,250,000 | $0 | $2,500,000 |
| Estate of John Brother2 CCCSmith | $0 | $1,250,000 | $0 | $0 | $1,250,000 | $0 | $2,500,000 |
| John Brother3 CCCSmith | $0 | $1,250,000 | $0 | $0 | $1,250,000 | $0 | $2,500,000 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Jane Sister1 CCCSmith | $0 | $1,250,000 | $0 | $0 | $1,250,000 | $0 | $2,500,000 |
| Jane Sister2 CCCSmith | $0 | $1,250,000 | $0 | $0 | $1,250,000 | $0 | $2,500,000 |
| John Victim DDDSmith | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,000,000 |
| Jane Wife DDDSmith | $0 | $0 | $0 | $0 | $4,000,000 | $0 | $4,000,000 |
| John Son DDDSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| Estate of John Father DDDSmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| John Brother DDDSmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Jane Sister DDDSmith | $0 | $0 | $0 | $0 | $1,250,000 | $0 | $1,250,000 |
| Jane Daughter EEESmith | $0 | $0 | $0 | $0 | $2,500,000 | $0 | $2,500,000 |
| John Victim FFFSmith | $5,000,000 | $0 | $0 | $2,000,000 | $0 | $0 | $7,000,000 |
| Jane Wife FFFSmith | $0 | $4,000,000 | $0 | $0 | $1,500,000 | $0 | $5,500,000 |
| Estate of John Father FFFSmith | $0 | $2,500,000 | $0 | $0 | $1,000,000 | $0 | $3,500,000 |
| Estate of Jane Mother FFFSmith | $0 | $2,500,000 | $0 | $0 | $1,000,000 | $0 | $3,500,000 |
| John Brother FFFSmith | $0 | $1,250,000 | $0 | $0 | $500,000 | $0 | $1,750,000 |
| Jane Sister FFFSmith | $0 | $1,250,000 | $0 | $0 | $500,000 | $0 | $1,750,000 |
| John Victim GGGSmith | $5,000,000 | $0 | $0 | $0 | $0 | $0 | $5,000,000 |
| Jane Wife GGGSmith | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| John Son GGGSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Daughter1 GGGSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Daughter2 GGGSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Estate of John Father GGGSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Estate of Jane Mother GGGSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Brother1 GGGSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| John Brother2 GGGSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| John Brother3 GGGSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| John Brother4 GGGSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| John Brother5 GGGSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| John Brother6 GGGSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| John Brother7 GGGSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| John Brother8 GGGSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| Jane Sister1 GGGSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| Jane Sister2 GGGSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| Jane Sister3 GGGSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| John Victim HHHSmith | $5,000,000 | $0 | $0 | $2,000,000 | $0 | $0 | $7,000,000 |
| Jane Wife HHHSmith | $0 | $4,000,000 | $0 | $0 | $1,500,000 | $0 | $5,500,000 |
| John Son1 HHHSmith | $0 | $2,500,000 | $0 | $0 | $1,000,000 | $0 | $3,500,000 |
| John Son2 HHHSmith | $0 | $2,500,000 | $0 | $0 | $1,000,000 | $0 | $3,500,000 |
| John Son3 HHHSmith | $0 | $2,500,000 | $0 | $0 | $1,000,000 | $0 | $3,500,000 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| John Son4 HHHSmith | $0 | $2,500,000 | $0 | $0 | $1,000,000 | $0 | $3,500,000 |
| John Son5 HHHSmith | $0 | $2,500,000 | $0 | $0 | $1,000,000 | $0 | $3,500,000 |
| John Victim IIISmith | $0 | $0 | $0 | $2,000,000 | $0 | $0 | $2,000,000 |
| Jane Wife IIISmith | $0 | $0 | $0 | $0 | $1,500,000 | $0 | $1,500,000 |
| Estate of Jane Mother IIISmith | $0 | $0 | $0 | $0 | $1,000,000 | $0 | $1,000,000 |
| John Brother1 IIISmith | $0 | $0 | $0 | $0 | $500,000 | $0 | $500,000 |
| Estate of John Brother2 IIISmith | $0 | $0 | $0 | $0 | $500,000 | $0 | $500,000 |
| John Brother3 IIISmith | $0 | $0 | $0 | $0 | $500,000 | $0 | $500,000 |
| John Brother4 IIISmith | $0 | $0 | $0 | $0 | $500,000 | $0 | $500,000 |
| Estate of Jane Sister1 IIISmith | $0 | $0 | $0 | $0 | $500,000 | $0 | $500,000 |
| Jane Sister2 IIISmith | $0 | $0 | $0 | $0 | $500,000 | $0 | $500,000 |
| Jane Sister3 IIISmith | $0 | $0 | $0 | $0 | $500,000 | $0 | $500,000 |
| John Victim JJJSmith | $5,000,000 | $0 | $0 | $2,000,000 | $0 | $0 | $7,000,000 |
| Estate of Jane Mother JJJSmith | $0 | $2,500,000 | $0 | $0 | $1,000,000 | $0 | $3,500,000 |
| John Brother1 JJJSmith | $0 | $1,250,000 | $0 | $0 | $500,000 | $0 | $1,750,000 |
| John Brother2 JJJSmith | $0 | $1,250,000 | $0 | $0 | $500,000 | $0 | $1,750,000 |
| John Brother3 JJJSmith | $0 | $1,250,000 | $0 | $0 | $500,000 | $0 | $1,750,000 |
| Jane Sister JJJSmith | $0 | $1,250,000 | $0 | $0 | $500,000 | $0 | $1,750,000 |
| John Victim KKKSmith | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,000,000 |
| Estate of John Victim LLLSmith | $5,000,000 | $0 | $0 | $2,000,000 | $0 | $0 | $7,000,000 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Jane Wife LLLSmith | $0 | $4,000,000 | $0 | $0 | $1,500,000 | $0 | $5,500,000 |
| John Son LLLSmith | $0 | $2,500,000 | $0 | $0 | $1,000,000 | $0 | $3,500,000 |
| Jane Daughter1 LLLSmith | $0 | $2,500,000 | $0 | $0 | $1,000,000 | $0 | $3,500,000 |
| Jane Daughter2 LLLSmith | $0 | $2,500,000 | $0 | $0 | $1,000,000 | $0 | $3,500,000 |
| Jane Daughter3 LLLSmith | $0 | $2,500,000 | $0 | $0 | $1,000,000 | $0 | $3,500,000 |
| Estate of John Brother1 LLLSmith | $0 | $1,250,000 | $0 | $0 | $500,000 | $0 | $1,750,000 |
| John Brother2 LLLSmith | $0 | $1,250,000 | $0 | $0 | $500,000 | $0 | $1,750,000 |
| Estate of John Brother3 LLLSmith | $0 | $1,250,000 | $0 | $0 | $500,000 | $0 | $1,750,000 |
| Estate of John Brother4 LLLSmith | $0 | $1,250,000 | $0 | $0 | $500,000 | $0 | $1,750,000 |
| Estate of Jane Sister1 LLLSmith | $0 | $1,250,000 | $0 | $0 | $500,000 | $0 | $1,750,000 |
| Jane Sister2 LLLSmith | $0 | $1,250,000 | $0 | $0 | $500,000 | $0 | $1,750,000 |
| Estate of Jane Sister3 LLLSmith | $0 | $1,250,000 | $0 | $0 | $500,000 | $0 | $1,750,000 |
| John Victim MMMSmith | $7,000,000 | $0 | $0 | $5,000,000 | $0 | $0 | $12,000,000 |
| Jane Wife MMMSmith | $0 | $4,000,000 | $0 | $0 | $5,000,000 | $0 | $9,000,000 |
| John Son1 MMMSmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| John Son2 MMMSmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| Estate of John Father MMMSmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| Estate of Jane Mother MMMSmith | $0 | $2,500,000 | $0 | $0 | $2,500,000 | $0 | $5,000,000 |
| John Victim NNNSmith | $5,000,000 | $0 | $0 | $0 | $0 | $0 | $5,000,000 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Jane Wife NNNSmith | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| John Son NNNSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Jane Daughter NNNSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Estate of Jane Mother NNNSmith | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Brother1 NNNSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| John Brother2 NNNSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| John Brother3 NNNSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| John Brother4 NNNSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| John Brother5 NNNSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| Jane Sister1 NNNSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| Jane Sister2 NNNSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| Jane Sister3 NNNSmith | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| Estate of John Victim OOOSmith | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,000,000 |
| Estate of Jane Wife OOOSmith Mother PPPSmith | $0 | $0 | $0 | $0 | $4,500,000 | $0 | $4,500,000 |
| John Victim PPPSmith | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,000,000 |
| John Victim QQQSmith | $5,000,000 | $0 | $0 | $5,000,000 | $0 | $0 | $10,000,000 |
| John Victim RRRSmith | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,000,000 |
| Jane Wife RRRSmith | $0 | $0 | $0 | $0 | $4,000,000 | $0 | $4,000,000 |
| John Victim SSSSmith | $5,000,000 | $0 | $0 | $5,000,000 | $0 | $0 | $10,000,000 |

| | | | | | | |
|---|---|---|---|---|---|---|
| John Victim TTTSmith | $5,000,000 | $0 | $0 | $2,000,000 | $0 | $0 | $7,000,000 |
| John Victim UUUSmith | $0 | $0 | $0 | $5,000,000 | $0 | $0 | $5,000,000 |
| Arnesia Ann Byers | $0 | $6,000,000 | $0 | $0 | $0 | $0 | $6,000,000 |
| Terry Patrick Byers | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| Angela Ann Pierce | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| Estate of James "Richard" Byers | $0 | $2,000,000 | $0 | $0 | $0 | $0 | $2,000,000 |
| Betty Bouldin Jones | $0 | $2,000,000 | $0 | $0 | $0 | $0 | $2,000,000 |
| Estate of Charlene Bouldin Watson | $0 | $2,000,000 | $0 | $0 | $0 | $0 | $2,000,000 |
| Judith Jean Essington | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| Robert Ray Essington Jr. | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Renee Jean Essington | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Estate of Frances M. Faraci | $0 | $5,000,000 | $0 | $0 | $0 | $0 | $5,000,000 |
| Estate of Richard L. Korn | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| Mildred D. Korn | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| Steven Wayne Korn | $0 | $2,000,000 | $0 | $0 | $0 | $0 | $2,000,000 |
| Kimberly A. Milling | $0 | $2,000,000 | $0 | $0 | $0 | $0 | $2,000,000 |
| Rikki L. Anglin | $0 | $2,000,000 | $0 | $0 | $0 | $0 | $2,000,000 |
| Donald Lewis (a/k/a Donald William Lewis) | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Thomas Lewis (a/k/a Thomas Martin Lewis) | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Kathleen Marie Ferrari | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Susan Marie Nickel | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Anita Blackwood Jaramillo | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Anthony Jaramillo | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| Natalie Jaramillo Ortberg | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| Albert Fulton Pearson | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| William Whildey Pearson II | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| Berge Pechtimaldjian | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Gary Pechtimaldjian | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Ronald Pechtimaldjian | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Angela Marie Collis | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Melissa Renee Allen | $0 | $3,500,000 | $0 | $0 | $0 | $0 | $3,500,000 |
| Estate of Leo Pezzi Sr. | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| Estate of Mary Donato Pezzi | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| John Pezzi | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| Rosalia Theresa Pezzi | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |
| Leonardo P. Samuel | $0 | $4,000,000 | $0 | $0 | $0 | $0 | $4,000,000 |
| Samuel Grant Wartell | $0 | $2,500,000 | $0 | $0 | $0 | $0 | $2,500,000 |
| Elizabeth Dean Weddle | $0 | $3,500,000 | $0 | $0 | $0 | $0 | $3,500,000 |
| Michael Alan Wartell | $0 | $1,250,000 | $0 | $0 | $0 | $0 | $1,250,000 |